[No. S021858. Oct. 22, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOAQUIN ESCOBAR, Defendant and Appellant.

## COUNSEL

Charles Bush, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster, Raquel Gonzales, Peter Quon and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

Arlo Smith, District Attorney (San Francisco) and Melody Schallon, Assistant District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**ARABIAN, J.**—Along with other forms of sexual assault, rape belongs to that class of crimes against the person that can never adequately be redressed. It is the quintessential "violation of the self" (*Coker* v. *Georgia* (1977) 433 U.S. 584, 597 [53 L.Ed.2d 982, 992, 97 S.Ct. 2861]), the ultimate affront to the dignity of the human spirit. As such, it is an offense against all humanity.

If we cannot fully expiate this evil, we can at least, within the bounds of contemporary morality, impose a just punishment to fit the crime. The Legislature has provided that any person who intentionally and personally inflicts great bodily injury during the commission of a felony shall receive an additional prison term of three years. (Pen. Code, 12022.7.)[1] The question here is whether the victim of a brutal kidnapping and rape suffered great bodily injury within the meaning of the statute. The Court of Appeal concluded that she did not, relying principally on our holding in *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274]. For reasons that will appear, however, we conclude that the Court of Appeal's reliance on *Caudillo* was misplaced, and that properly analyzed the evidence sustains the jury's finding. Accordingly, we reverse that portion of the judgment of the Court of Appeal setting aside the finding of great bodily injury and striking the corresponding three-year enhancement.

### FACTS

On a late summer evening in 1989, Maria C., having completed several errands in Santa Ana, was waiting at a bus station to return to her home in Garden Grove. She was sitting by herself, reading, when a man whom she had never seen before approached. The man, later identified as defendant Joaquin Escobar, asked Maria if she wanted company. Maria declined and retreated into a restroom to avoid further contact with him. When she emerged after several minutes, defendant was waiting. He accosted her, told her that he had a gun, and ordered her to walk with him. She felt a heavy, round object against her side.

Defendant forced Maria out of the bus station and into a parked blue Toyota. He drove out of the lot and across a number of surface streets, eventually ending up on or near the freeway. At one point, Maria saw a police car, screamed and attempted to escape. Defendant pulled her back by her hair and squeezed her neck. The effort caused the car to veer into the center divider.

---

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

A short time later, defendant stopped the car in an industrial area and got out to urinate. Maria also got out and wrote the number of the license plate on a scrap of newspaper. She attempted to run away but defendant caught up with her, grabbed her hair and blouse, slapped her and threw her back into the car.

They drove some distance further and parked on the side of the freeway. Defendant told Maria that they were going to walk and forced her to accompany him some distance into the dark. Maria struggled to escape but defendant was too strong; he variously dragged her, pulled her by the hair and threw her onto the cement ground, bloodying her knees.

Finally, they came to a bridge or overpass. Defendant forced Maria to the ground.With his knee pressed against her chest, he placed his hand over her mouth and yanked her hair, striking her head against the ground. Maria continued to struggle; she bit his finger, drawing blood, and scratched his face. In response, defendant pushed his finger into her eye with such pressure that she thought it would come out.

Defendant then forcibly removed Maria's skirt and underpants. She was screaming and struggling but defendant warned her that if she continued it would be worse for her. He unbuttoned his pants and raped her.

Shortly thereafter, a passing bicyclist heard Maria's screams and approached. Defendant ran off and the cyclist continued on. Maria sought help from a nearby residence.

When Eric Leingang, the occupant of the house, saw Maria he assumed that she had been in an auto accident. She had large, bloody cuts on her knees, she was not wearing pants and her shirt was torn. The emergency medical technician who responded to the scene assessed Maria's injuries. He observed bruising, scrapes and abrasions. Because of a possible neck injury, he put a collar on her neck and placed her on a back board to stabilize her spine. Maria left on a stretcher and was taken in an ambulance to a hospital.

The hospital report indicated that Maria had suffered multiple abrasions to her thighs, knees, hips and elbows. Several photographs introduced at trial revealed raw and bloody asphalt burns and bruises over various parts of her body. Maria testified that her neck hurt so badly after the attack that she could not move it. Vaginal pain prevented her from walking without impairment for more than a week. A police employee testified that when Maria reported for an interview six days after the assault, she appeared injured, walked with a very heavy limp, and required the assistance of two friends, one on each side, to help her.

The license plate number that Maria had copied down eventually led the police to defendant. They discovered a small, blue car in defendant's driveway with damage to the body. Maria identified defendant's picture from a photographic lineup. She also identified defendant at trial. Defendant did not testify. He presented several character witnesses to testify that he was not a violent person.

Defendant was found guilty by a jury of kidnapping (§ 207), rape (§ 261, subd. (a)(2)), and assault with a deadly weapon (§ 245, subd. (a)). The jury also found that defendant had kidnapped the victim for the purpose of committing rape (§ 667.8), and further found that he had inflicted great bodily injury in the commission of the offenses. (§ 12022.7.) He was sentenced to state prison for the upper term of eight years on the rape count, with additional three-year consecutive terms for the findings of great bodily injury and kidnapping for the purpose of committing the rape. Defendant received a total sentence of 14 years. The terms on the remaining counts were ordered to be served concurrently.

In a two-to-one decision, the Court of Appeal affirmed defendant's convictions for kidnapping, rape and assault with a deadly weapon. However, because there was no evidence of "disfigurement or significant impairment," the Court of Appeal concluded that Maria's injuries did not meet the test of "severe" and "protracted" harm articulated by this court in *People* v. *Caudillo, supra*, 21 Cal.3d 562, 588-589. Accordingly, the Court of Appeal ordered that the finding of great bodily injury be set aside, and the corresponding three-year enhancement stricken.

## DISCUSSION

### 1. *The Meaning of Great Bodily Injury*

The question we address is whether the evidence as set forth above is sufficient to sustain the jury's finding that defendant inflicted "great bodily injury" within the meaning of section 12022.7. In resolving this question, we do not write on a clean slate. The Legislature has specifically defined the term "great bodily injury," and case law—particularly this court's decision in *People* v. *Caudillo, supra*, 21 Cal.3d 562—has superimposed substantial judicially created baggage on that definition. Our analysis begins, therefore, with a review of the pertinent authorities.

Subject to certain exceptions and conditions not here relevant, section 12022.7 imposes a three-year sentence enhancement for any person who intentionally and personally inflicts "great bodily injury" in the commission

or attempted commission of a felony. The statute expressly defines great bodily injury as constituting "a significant or substantial physical injury."[2]

Section 12022.7 was originally enacted in 1976 as part of the comprehensive Uniform Determinate Sentencing Act. Shortly thereafter, we had occasion to examine the scope and purposes of the statute, in light of its recent history, in *People* v. *Caudillo, supra,* 21 Cal.3d 562. Section 12022.7 itself was not actually at issue. The question was whether the evidence supported a finding of great bodily injury under section 461, which at the time of the offenses prescribed an enhanced punishment for intentional infliction of such injury during the commission of a burglary. Section 461 was one of a trio of statutes (the others were §§ 213 [robbery] and 264 [rape]) which escalated the penalty when the victim of those crimes suffered great bodily injury. Although none of the sections defined the term "great bodily injury," the jury in *Caudillo* was given the then standard CALJIC instruction, which read as follows: "The term 'great bodily injury,' as used in this instruction, refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or moderate harm." (21 Cal.3d at p. 581, fn. 12; CALJIC No. 17.20 (1973 rev.) (3d rev. ed. pocket pt.).)

After a review of the legislative history and decisional law, the *Caudillo* court determined that the enhancement provisions of sections 461, 213 and 264 were designed to deter the infliction of gratuitous injury over and above that necessarily present in the commission of the offenses themselves. "[T]he Legislature indicated an intent that rape by force or violence was *not* synonymous with rape by means of great and immediate bodily harm." (21 Cal.3d at p. 583, original italics.) Thus, although the victim in *Caudillo, supra,* was raped, sodomized and forced to orally copulate the defendant, the court concluded that the resulting physical effects—gagging, vomiting, defecation and superficial cuts—did not constitute "substantial or significant injury 'in addition to that which must be present in every case of rape.'" (*Id.* at p. 585, quoting from *People* v. *Richardson* (1972) 23 Cal.App.3d 403, 412 [100 Cal.Rptr. 251].)

To this point, the court's reasoning was unremarkable. That the Legislature had intended a substantial injury *beyond* that inherent in the offense

---

[2]Section 12022.7 provides in full as follows: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted. [¶] As used in this section, great bodily injury means a significant or substantial physical injury. [¶] This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

itself was fairly apparent, and several Court of Appeal decisions, notably *People* v. *Richardson, supra,* 23 Cal.App.3d 403, and *People* v. *Wells* (1971) 14 Cal.App.3d 348 [92 Cal.Rptr. 191], had so held. However, the *Caudillo* court went on to observe that the Legislature had recently enacted section 12022.7, which "supplant[ed] the specific great-bodily-injury provisions of Penal Code sections 213, 264, and 461 with their [separate] great-bodily-injury enhancement provisions, and [was] made applicable to all felonies which do not necessarily involve such injury." (21 Cal.3d at pp. 580-581.) It was here, in construing section 12022.7 for whatever light it might shed on section 461, that the court encountered difficulty.

The analysis began by noting, correctly, that the original version of section 12022.7 "spelled out in some detail" the level of injury necessary to trigger the three-year enhancement: " 'As used in this section, "great bodily injury" means a serious impairment of physical condition, which includes any of the following: [¶] (a) Prolonged loss of consciousness. [¶] (b) Severe concussion. [¶] (c) Protracted loss of any bodily member or organ. [¶] (d) Protracted impairment of function of any bodily member or organ or bone. [¶] (e) A wound or wounds requiring extensive suturing. [¶] (f) Serious disfigurement. [¶] (g) Severe physical pain inflicted by torture.' " (*People* v. *Caudillo, supra,* 21 Cal.3d at p. 581; Stats. 1976, ch. 1139, § 306, pp. 5162-5163.)

This version of the statute, however, never became law. The effective date of the Determinate Sentencing Act was July 1, 1977. Prior to that date, urgency legislation was introduced to make changes in the act. Among these changes were a number of significant alterations to the definition of great bodily injury in section 12022.7. On April 12, 1977, the amending legislation was itself amended in the Assembly by *deleting* the detailed enumeration of injuries which defined great bodily injury. (Assem. Amend. to Assem. Bill No. 476 (1977-1978 Reg. Sess.) Apr. 12, 1977.) One week later, the bill was further amended in the Assembly by changing the remaining definition of "great bodily injury" from a "serious impairment of physical condition" to "a significant or substantial physical injury." (Assem. Amend. to Assem. Bill No. 476 (1977-1978 Reg. Sess.) Apr. 19, 1977.) This was the version ultimately enacted into law. (Stats. 1977, ch. 165, § 94, p. 679.)

Although the legislative history sheds little light on the purpose underlying the *first* Assembly amendment removing the detailed definition of great bodily injury, it appears that the intent was to preclude the possibility that the specific examples set forth therein would be construed as exclusive of other types of injury not expressly enumerated. As to the *second* amendment, the evidence of legislative intent is somewhat more enlightening. The analysis of the Assembly Committee on Criminal Justice explained that great

bodily injury was "redefined as a 'significant or substantial physical injury' *as provided in the CALJIC instruction*." (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 476 (1977-1978 Reg. Sess.) as amended Apr. 19, 1977.) Indeed, the second amendment to section 12022.7 adopted the *exact* language found in the then current CALJIC instruction, which defined great bodily injury as "significant or substantial bodily injury or damage." (CALJIC No. 17.20 (1973 rev.) (3d rev. ed. pocket pt.).)

Additional evidence that the Legislature intended to replace the detailed and exacting definition of "great bodily injury" set forth in the original version of the statute with the more general standard then in use, may be found in a subsequent report of the Assembly Committee on Criminal Justice. In a summary of the major changes enacted by the Assembly, the report stated: "A.B. 476 *repeals* the specific definition of GBI [great bodily injury] and substitutes for it a 'significant or substantial physical injury.' *This codifies the current law*." (Assem. Com. on Criminal Justice, Summary of Major Changes in Sen. Bill No. 42 (Stats. 1976, ch. 1139, § 306, p. 5162) Through Assem. Bill No. 476 (1977-1978 Reg. Sess.) as enacted June 27, 1977 (Stats. 1977, ch. 165, § 94, p. 679), italics added.)

Thus, the legislative history of section 12022.7 reveals a clear legislative intent to *discard* the original, detailed definition of great bodily injury and substitute the more general standard then currently in use.

Inexplicably, however, the *Caudillo* court (*supra*, 21 Cal.3d 562) failed to consider that the original version of section 12022.7 was altered by two separate amendments to the urgency legislation introduced to amend the Determinate Sentencing Act. It simply noted that the statute "was amended" in 1977 but took no account of the legislative history relating to the second amendment to Assembly Bill No. 476 and, tellingly, attributed no significance to the subsequent alteration in the definitional standards required to trigger the three-year enhancement. Instead, the court concluded that "the 1977 amendment to Penal Code section 12022.7 was not intended to lessen the magnitude of bodily injury required by the 1976 detailed definition of great bodily injury." (*People* v. *Caudillo, supra*, 21 Cal.3d at pp. 581-582.) Accordingly, the court proceeded to borrow a number of themes from the legislatively *abandoned* criteria and incorporated them into a working translation or gloss on the statutory definition of "great bodily injury."

Thus, in holding that the evidence did not sustain the jury's finding of great bodily injury, the *Caudillo* court characterized the victim's injuries as "transitory and short-lived" rather than "severe or protracted in nature." (21 Cal.3d at p. 588.) The court also observed that there was no evidence "of any

permanent, protracted or visible disfigurement," nor any "protracted impairment of function of any portion of her body." (*Id.* at pp. 588-589.) In effect, the court reinstated the very criteria that the Legislature itself had seen fit to renounce. The judicial reformation of the statute was thus complete.

Not surprisingly, *Caudillo, supra,* 21 Cal.3d 562, soon became the standard litmus test for determining great bodily injury. In *People* v. *Johnson* (1980) 104 Cal.App.3d 598 [164 Cal.Rptr. 69], for example, the Court of Appeal concluded that the victim's injury, a bone fracture, "is not merely a transitory bodily distress, but a severe and protracted injury which causes significant pain and requires considerable time to heal. In other words, in case of a bone fracture the double criteria set out in *Caudillo* are present. This type of injury is of both sufficient severity and permanence and hence constitutes a substantial and significant physical injury within the delineation of both *Caudillo* and the statute." (*Id.* at p. 609.)

Additional examples of the influence of *Caudillo* abound. In *People* v. *Muniz* (1989) 213 Cal.App.3d 1508 [262 Cal.Rptr. 743], the assailant beat the victim about the face with such force that she lost consciousness and later recalled that the blows " 'felt like splinters going through my skull.' " (*Id.* at p. 1520.) The Court of Appeal sustained the finding of great bodily injury, but only on the ground that the injuries, "while not permanent, were more than merely transitory. Her bruises lasted four months." (*Ibid.*) In *People* v. *Brown* (1985) 174 Cal.App.3d 762 [220 Cal.Rptr. 264], the victim of a rape suffered a lacerated hymen requiring sutures to mend, and a vaginal area described as " 'bloody, bludgeoned [and] smashed.' " (*Id.* at p. 765) Still, the court was compelled to determine whether the injuries were protracted or merely "transitory or short lived." (*Ibid.*)

The test for great bodily injury articulated in *Caudillo, supra,* 21 Cal.3d 562, also proved to be dispositive in the case at bar. Here, however, it persuaded the Court of Appeal to *reverse* the jury's finding of great bodily injury. While acknowledging that Maria "suffered injuries not routinely associated with rape," the Court of Appeal nevertheless concluded that her bruises, scrapes, stiff neck and sore vagina constituted only "transitory bodily distress." "They do not amount," the court stated, "to the 'severe and protracted' type of harm which meets the definition of 'significant or substantial physical injury' specified by the Legislature and defined in *Caudillo.*"

We cannot fault the Court of Appeal for deferring to *Caudillo, supra,* 21 Cal.3d 562. As explained above, however, *Caudillo* erred in concluding that the Legislature intended no change in the definition of "great bodily injury"

when it discarded the specific criteria set forth in the original version of section 12022.7 and substituted the more general "significant or substantial physical injury" test then in use. Clearly, the latter standard contains no specific requirement that the victim suffer "permanent," "prolonged" or "protracted" disfigurement, impairment, or loss of bodily function. Indeed, nothing in the statutory definition precludes a jury from finding great bodily injury based on precisely the quantum of evidence presented here: extensive bruises and abrasions over the victim's legs, knees and elbows, injury to her neck and soreness in her vaginal area of such severity that it significantly impaired her ability to walk. As the Court of Appeal correctly concluded, these are not the type of injuries "routinely associated with rape," but reflect a degree of brutality and violence substantially beyond that necessarily present in the offense.

█ It is well settled that the determination of great bodily injury is essentially a question of fact, not of law. " 'Whether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding.' " (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 107 [192 Cal.Rptr. 748, 665 P.2d 520], quoting *People* v. *Salas* (1976) 77 Cal.App.3d 600, 606 [143 Cal.Rptr. 755].)[3]

█ Analyzed in light of the controlling principles set forth above, we conclude the evidence was sufficient to sustain the jury's finding of great bodily injury.

### 2. *Legislative Inaction*

*Caudillo*'s shortcomings notwithstanding, defendant contends that because more than a dozen years have passed since our decision, and the Legislature has twice amended the statute in certain unrelated respects without modifying the definition of "great bodily injury," we must presume that the Legislature has ratified our earlier construction.[4] The contention is unpersuasive.

█ To be sure, where the Legislature amends a statute without altering a consistent and long-standing judicial interpretation of its operative language,

---

[3] As the Court of Appeal in *People* v. *La Fargue* (1983) 147 Cal.App.3d 878, 886-887 [195 Cal.Rptr. 438], aptly stated: "The term 'great bodily injury' has been used in the law of California for over a century without further definition and the courts have consistently held that it is not a technical term that requires further elaboration. [Citations.]."

[4] In 1978, the Legislature amended section 12022.7 to remove section 245, subdivision (a) (assault with a deadly weapon) from the list of crimes to which the statute was inapplicable. (Stats. 1978, ch. 579, § 40, pp. 1996-1997.) In 1979, the Legislature added arson to the same list. (Stats. 1979, ch. 145, § 17, p. 341.)

courts generally indulge in a presumption that the Legislature has ratified that interpretation. (*People* v. *Bouzas* (1991) 53 Cal.3d 467, 475 [279 Cal.Rptr. 847, 807 P.2d 1076].) Nevertheless, "[t]he presumption of legislative acquiescence in prior judicial decisions is not conclusive in determining legislative intent. As we have also stated: 'Legislative silence after a court has construed a statute gives rise at most to an arguable inference of acquiescence or passive approval . . . . But something more than mere silence is required before that acquiescence is elevated into a species of implied legislation . . . . [Citations.] In the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry. 'Legislative inaction is "a weak reed upon which to lean."' [Citation.]" (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873], some internal quotation marks omitted; accord *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300-301 [250 Cal.Rptr. 116, 758 P.2d 58]; *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 923 [221 Cal.Rptr. 575, 710 P.2d 375].)

■ Neither of the legislative amendments to section 12022.7 affected or reenacted the "great bodily injury" portion of the statute. Thus, although the Legislature has not affirmatively disapproved the court's analysis in *Caudillo*, *supra*, 21 Cal.3d 562, neither has it expressly or impliedly endorsed it. ■■■■ Accordingly, as our prior decisions indicate, we are free to reexamine our earlier holding. (*Moradi-Shalal*, *supra*, 46 Cal.3d at p. 301; *Cianci* v. *Superior Court*, *supra*, 40 Cal.3d at p. 923.)[5]

### 3. Retroactive Application

■ Finally, defendant contends that any judicial reinterpretation of section 12022.7 cannot be applied to him without violating the due process and ex post facto clauses of the United States Constitution.

---

[5]Justice Mosk argues in a concurring opinion that it is wrong to "disapprove *Caudillo*" because the Legislature has twice "reenacted" the statute without modifying the definition of great bodily injury as construed therein. (Conc. opn., *post*, p. 756.) We do not, however, purport to disapprove *Caudillo* as a whole, but only that portion (essentially dictum) which misconstrued the legislative history and meaning of section 12022.7. Furthermore, the intervening amendments to section 12022.7 did not "reenact" the definition of great bodily injury. "Where a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form. The portions which are not altered are to be considered as having been the law from the time when they were enacted; the new provisions are to be considered as having been enacted at the time of the amendment; and the omitted portions are to be considered as having been repealed at the time of the amendment. . . ." (Gov. Code, § 9605; See *Estate of Childs* (1941) 18 Cal.2d 237, 245 [115 P.2d 432, 136 A.L.R. 333] ["The portion of an amended statute which remains the same as it was prior to the amendment, continues to be the law from the time of its original enactment. . . ."]; accord *Estate of Martin* (1908) 153 Cal. 225, 229 [94 P. 1053]; *County of Sacramento* v. *Pfund* (1913) 165 Cal. 84, 88-89 [130 P. 1041].)

■ It is settled that a state Supreme Court, no less than a state Legislature, is barred from making conduct criminal which was innocent when it occurred, through the process of judicial interpretation. "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect. [Citation.]" (*Bouie* v. *City of Columbia* (1964) 378 U.S. 347, 354 [12 L.Ed.2d 894, 900, 84 S.Ct. 1697]; see also *People* v. *Wharton* (1991) 53 Cal.3d 522, 586 [280 Cal.Rptr. 631, 809 P.2d 290]; *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 634 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *In re Baert* (1988) 205 Cal.App.3d 514, 518 [252 Cal.Rptr. 418].)

■ However, we need not decide whether today's decision was so "unexpected" as to preclude its retroactive application. For even under the former *Caudillo* standards, *supra*, 21 Cal.3d 562, it is clear that the Court of Appeal erred in concluding the evidence did not sustain the jury finding of great bodily injury.

As the Court of Appeal in *People* v. *Jaramillo* (1979) 98 Cal.App.3d 830 [159 Cal.Rptr. 771] observed, "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Clearly, it is the trier of fact that must in most situations make the determination." (*Id.* at p. 836, cited with approval in *People* v. *Wolcott*, *supra*, 34 Cal.3d at p. 107.) The jury here was instructed on the meaning of great bodily injury in terms consistent with our holding in *Caudillo*, *supra*, 21 Cal.3d 562. Thus, defendant received the full benefit of the former law at trial. Furthermore, numerous decisions interpreting and applying *Caudillo* have upheld findings of great bodily injury based on injuries of a degree and severity similar to those inflicted on Maria C. (See, e.g., *People* v. *Jaramillo*, *supra*, 98 Cal.App.3d 830 [great bodily injury finding upheld where battered child suffered multiple contusions and swelling of her hands, arms and buttocks]; *People* v. *Sanchez* (1982) 131 Cal.App.3d 718 [182 Cal.Rptr. 671] [multiple abrasions and lacerations to the victim's back and bruising of the eye and cheek found to be great bodily injury]; *People* v. *Brown*, *supra*, 174 Cal.App.3d 762 [one-inch long laceration of victim's vagina supports finding of great bodily injury]; *People* v. *Corona* (1989) 213 Cal.App.3d 589 [261 Cal.Rptr. 765] [swollen jaw, bruises to head and neck and sore ribs support finding of great bodily injury].)

In sum, the evidence adduced at trial substantially supported the jury's finding of great bodily injury, even under the erroneous *Caudillo* test. (*Caudillo*, *supra*, 21 Cal.3d 562.)

## DISPOSITION

That portion of the Court of Appeal decision reversing the finding of great bodily injury and striking the corresponding three-year enhancement is reversed. In all other respects the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Panelli, J., Kennard, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I concur in the judgment. The Court of Appeal did indeed err in holding the evidence insufficient to support the jury's finding that defendant inflicted "great bodily injury" on the victim within the meaning of Penal Code section 12022.7. Its judgment in that part must accordingly be reversed.

I write separately, however, because I see no reason to reconsider, less still to disapprove, any aspect of our decision in *People* v. *Caudillo* (1978) 21 Cal.3d 562 [580 P.2d 274].

I

Penal Code section 12022.7 provides in its entirety as follows.

"Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted.

"*As used in this section, great bodily injury means a significant or substantial physical injury.*

"This section shall not apply to murder or manslaughter or a violation of [Penal Code] Section 451 or 452. The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact." (Italics added.)

In *Caudillo*, we observed that "the Legislature [had] addressed itself to the problem of defining what constitutes 'great bodily injury.' As part of the Uniform Determinate Sentencing Act of 1976, made to become effective

July 1, 1977, section 12022.7 was added to the Penal Code. Section 12022.7 supplants the specific great-bodily-injury provisions of Penal Code sections 213, 264 and 461 with their great-bodily-injury enhancement provisions, and is made applicable to all felonies which do not necessarily involve such injury. Under the statutory scheme of section 12022.7, as originally enacted in 1976, the level of injury necessary to trigger the additional penalty of three years in prison was spelled out in some detail: 'As used in this section, "great bodily injury" means a serious impairment of physical condition, which includes any of the following: [¶] (a) Prolonged loss of consciousness. [¶] (b) Severe concussion. [¶] (c) Protracted loss of any bodily member or organ. [¶] (d) Protracted impairment of function of any bodily member or organ or bone. [¶] (e) A wound or wounds requiring extensive suturing. [¶] (f) Serious disfigurement. [¶] (g) Severe physical pain inflicted by torture.'

"Penal Code section 12022.7 was amended in 1977 to strike out the detailed definition of 'great bodily injury' and substitute the following definition: 'As used in this section, great bodily injury means a *significant* or *substantial* physical injury.' (Italics added.)

"Thus it may be seen that the Legislature, while changing its mind with respect to a detailed definition of 'great bodily injury' before that definition became effective, has now adopted a definition of 'great bodily injury' that requires that the injury constitute a 'significant or substantial *physical* injury,' the definition approved in [*People* v.] *Wells* [(1971) 14 Cal.App.3d 348 (92 Cal.Rptr. 191)] and [*People* v.] *Richardson* [(1972) 23 Cal.App.3d 403 (100 Cal.Rptr. 251)]." (*People v. Caudillo, supra,* 21 Cal.3d at pp. 580-581, citations and fn. omitted.)

In *Caudillo,* we examined *Wells* and *Richardson*: "Noting that a burglary is escalated from the second to the first degree when it involves an assault upon an occupant of the premises, the [*Wells*] court reasoned that the great-bodily-injury provision 'was designed to impose a higher punishment on the perpetrator if he inflicts injuries more serious than those incurred in a simple assault.'

"The *Wells* court approved an instruction which advised the jury that great bodily injury 'refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury,' and held that evidence that the victim had been knocked unconscious and had suffered numerous cuts, with scars still evident at time of trial, and intense headaches for several days, was sufficient to support such a finding.

"In [*Richardson*], the court construed the great-bodily-injury provision of Penal Code section 213 (robbery). Reviewing the instruction approved in

*Wells*, the court stated that '[i]t seems that it would be correct to exclude "moderate harm" as well.' " (*People* v. *Caudillo, supra*, 21 Cal.3d at pp. 578-579, citation and fn. omitted.)

In *Caudillo*, we concluded: "Th[e] definition of great bodily injury" adopted by the Legislature in Penal Code section 12022.7 "requires that the injury constitute a 'significant or substantial *physical* injury,' the definition approved in *Wells* and *Richardson*. This definition of great bodily injury uses the exact language found in CALJIC Instruction No. 17.20 (1973 Revision) . . . . In the CALJIC authors' Comment to Instruction No. 17.20, reference is made to *Wells* and *Richardson* as authority to support the instruction. It is apparent, therefore, that the 1977 amendment to Penal Code section 12022.7 was not intended to lessen the magnitude of bodily injury required by the 1976 detailed definition of great bodily injury. Rather, it appears that the 1977 amendment to Penal Code section 12022.7 was designed to preclude the possibility that the 1976 detailed definition of great bodily injury be construed as all inclusive, leaving no latitude to the trier of fact to find a bodily injury of equal magnitude to the categories specified in the detailed definition but not coming literally within any category set forth therein." (*People* v. *Caudillo, supra*, 21 Cal.3d at pp. 581-582, fn. omitted.)

## II

I now turn to the case at bar. In my view, the evidence is indeed sufficient to support the finding that defendant inflicted "great bodily injury" on the victim within the meaning of Penal Code section 12022.7, and the Court of Appeal erred in concluding to the contrary.

There is much evidence bearing on the harm defendant did to the victim. His attack was unquestionably brutal. For purposes here, I need note only that there was testimony to the effect that a full six days after the incident, the victim could not walk without a very heavy limp and required the assistance of persons at each side to hold her arms as she took her steps. True, a causal link between defendant's acts and the victim's condition is not proved by direct evidence. But it does indeed arise as a reasonable inference from the facts in their entirety.

Viewing the evidence, as I must, in the light most favorable to the People, I believe that a rational trier of fact could certainly have found beyond a reasonable doubt that the victim suffered a "physical injury" that was both "significant" *and* "substantial" within the meaning of Penal Code section 12022.7. Indeed, such a trier of fact could have determined to the requisite degree of certainty that the victim—in the provision's original wording—

experienced a "serious impairment of physical condition," specifically, "[p]rotracted impairment of function of" her legs.

## III

As the law manifestly requires, the majority recognize, and correct, the Court of Appeal's error. In their result, I follow.

But then, inexplicably, the majority proceed to reconsider and disapprove *Caudillo* to some uncertain extent. With their analysis, I cannot agree.

There is no reason to reconsider *Caudillo*. The case was decided 14 years ago. Up until today, it has not met with any criticism in any published judicial decision. I note that accompanying the opinion of the court in *Caudillo* are two separate opinions. Neither disagreed with the court's interpretation of Penal Code section 12022.7, including the definition of "great bodily injury." Nor has the Legislature. Plainly, it has had the opportunity to do so if it wished. It has had the time. As noted, 14 years have passed since the decision was handed down. It has also had the occasion. Twice during that 14-year period, it amended the statutory provision. (Stats. 1978, ch. 579, § 40, pp. 1996-1997; Stats. 1979, ch. 145, § 17, p. 341.) Each time, it declined to modify the definition. Indeed, each time it reenacted the language *in ipsissimis verbis*. There can be no more convincing indication of legislative acquiescence. The majority attempt to deny the fact of reenactment by citing a mere rule of statutory construction. Their attempt is patently unsuccessful.

If there is no reason for reconsideration of *Caudillo*, there is less reason still for disapproval.

*Caudillo*'s discussion of Penal Code section 12022.7, which is quoted at length above, is manifestly broad and detailed. It fully described the Legislature's amendment of the definition of "great bodily injury" from the original "serious impairment of physical condition" *with* certain examples to the current "significant or substantial physical injury." That it did not note that the amendment proceeded through a stage at which the definition was "serious impairment of physical condition" *without* the examples does not in any way undermine its analysis.

One question is simple and trivial. Did the Legislature intend to change the *words* of the definition of "great bodily injury" when it made its amendment? The answer is indisputably yes.

*Caudillo* expressly recognized the point. The majority make a suggestion to the contrary. They are not persuasive.

Another question is more difficult and significant. Did the Legislature intend to change the *substance* of the definition? The answer is apparently no. True, it removed the phrase, "serious impairment of physical condition." But in its place, it inserted, "significant or substantial physical injury"—which it impliedly defined through the words of the 1973 revision of CALJIC No. 17.20 as excluding not only "trivial or insignificant injury" but even "moderate harm." As noted, *Wells* and *Richardson* are the sources of the current definition. Their facts disclose its meaning. The *Wells* court upheld a great-bodily-injury finding on evidence that the victim suffered numerous cuts and bruises on her head, face, and arms; was knocked unconscious; experienced severe headaches for several days; and carried scars at least until the time of trial. (*People* v. *Wells*, *supra*, 14 Cal.App.3d at pp. 352-353, 356-360.) By contrast, the *Richardson* court held that a similar finding was not sustainable even though there was evidence that the victim suffered a single "terrific" blow on her back and neck that may have knocked her unconscious. (*People* v. *Richardson*, *supra*, 23 Cal.App.3d at pp. 409-410.)

*Caudillo* concluded that the Legislature's amendment of the definition of "great bodily injury" "was not intended to lessen the magnitude of bodily injury [it had originally] required . . . ." (*People* v. *Caudillo*, *supra*, 21 Cal.3d at p. 582.) The majority assert that this holding was plain error. They apparently assume that "significant or substantial physical injury" is not as great as "serious impairment of physical condition." As shown above, that assumption is unfounded.

IV

In conclusion, although the majority are wrong to reconsider and disapprove *Caudillo*, they are right to conclude that the Court of Appeal erred by striking the great-bodily-injury finding. Therefore, I concur in the judgment.