Filed 4/25/13  P. v. Stewart CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B238941 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BA385061) |
| LAZERRE STEWART, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Affirmed.

Carey D. Gorden, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Lazerre Stewart appeals his convictions for assault by means likely to produce great bodily injury and misdemeanor sexual battery. The trial court sentenced Stewart to a term of 14 years in prison. Stewart contends the evidence was insufficient to support his conviction for sexual battery and a great bodily injury enhancement, and the trial court abused its discretion by denying his *Romero* motion.[1] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

a. *People's evidence.*

On the afternoon of May 31, 2011, Karen Arevalo-Garcia (hereinafter Arevalo) was riding the Orange Line bus in Van Nuys. Stewart sat down next to her and spoke to her in English during a 10-minute trip to the North Hollywood metro station. Arevalo spoke only Spanish, did not understand what Stewart was saying, and ignored him.

When the bus reached the station, Arevalo transferred to a crowded Red Line train; Stewart followed her. He entered the same subway car as Arevalo, and positioned himself approximately four feet behind her. Before the train left the station, Arevalo felt someone forcefully grab her buttocks from behind. She immediately turned around and found herself face-to-face with Stewart. She called Stewart "stupid" in Spanish. Stewart began tugging on Arevalo's purse, while Arevalo struggled to hold on to it. Stewart then punched her in the left eye with a closed fist and left the train car. Arevalo tried to follow him, but became dizzy and other passengers insisted she sit down.

A police officer who was in the next train car heard commotion and investigated. With Arevalo's assistance, he apprehended Stewart within 10 minutes. Arevalo identified Stewart as her attacker at the scene and at trial.

As a result of Stewart's punch, Arevalo's eye became swollen and discolored. It remained black and blue for two to three weeks. She experienced immediate pain from

---

[1]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

the punch, and had headaches for two weeks.  She was unable to seek medical attention for the injury because her employer did not allow her to take the necessary time off.

b. *Defense evidence.*

Stewart testified in his own behalf.  According to him, the incident was a misunderstanding.  He was standing behind Arevalo on the train when she suddenly began yelling at him in Spanish and hitting his face.  He put up his hands to protect his face and unintentionally struck her in the eye.  He never grabbed her buttocks.

2. *Procedure.*

Trial was by jury.  Stewart was convicted of assault by means likely to produce great bodily injury (Pen. Code, former § 245, subd. (a)(1))[2] and misdemeanor sexual battery (§ 243.4, subd. (e)).  The jury further found Stewart personally inflicted great bodily injury upon Arevalo during commission of the assault (§ 12022.7, subd. (a)).  It acquitted him of attempted robbery.  Stewart admitted suffering a prior serious or violent felony conviction for committing a lewd or lascivious act with a child (§§ 288, subd. (a), 667, subds. (a), (b)-(i), 1170.12, subds. (a)-(d)), and serving a prior prison term within the meaning of section 667.5, subdivision (b).  The trial court denied Stewart's *Romero* motion and sentenced him to a term of 14 years in prison.  It imposed a restitution fine, a suspended parole restitution fine, a sexual offender fine, a court security assessment, and a criminal conviction assessment.  Stewart appeals.

DISCUSSION

1. *Sufficiency of the evidence.*

a. *Standard of review.*

When determining whether the evidence was sufficient to sustain a criminal conviction, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find

---

[2]     All further undesignated statutory references are to the Penal Code.

the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Snow* (2003) 30 Cal.4th 43, 66; *People v. Carrington* (2009) 47 Cal.4th 145, 186-187.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Medina* (2009) 46 Cal.4th 913, 919.) Reversal is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The same standard applies when the conviction is based primarily upon circumstantial evidence. (*Zamudio*, at p. 357; *People v. Valdez* (2004) 32 Cal.4th 73, 104.)

      b. *The evidence was sufficient to support the jury's great bodily injury finding.*

      As noted, the jury found Stewart personally inflicted great bodily injury upon Arevalo during commission of the assault. As a result, his sentence was enhanced by three years. (§ 12022.7, subd. (a).) He contends the evidence was insufficient to establish the victim's injuries constituted great bodily injury within the meaning of section 12022.7. We disagree.

      Section 12022.7, subdivision (f), defines " 'great bodily injury' " as "a significant or substantial physical injury." (§ 12022.7, subd. (f); *People v. Cross* (2008) 45 Cal.4th 58, 63; *People v. Washington* (2012) 210 Cal.App.4th 1042, 1047-1048; *People v. Escobar* (1992) 3 Cal.4th 740, 749-750.) To be considered significant or substantial, the injury need not cause permanent, prolonged, or protracted disfigurement, impairment, or loss of bodily function. (*Escobar*, at p. 750.) It "need not meet any particular standard for severity or duration, but need only be 'a substantial injury *beyond* that inherent in the offense itself[.]' " (*People v. Le* (2006) 137 Cal.App.4th 54, 59; *Escobar*, at pp. 746-747, 750.) "An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.' [Citations.]" (*Washington*, at p. 1047; *People v. Jung* (1999) 71 Cal.App.4th 1036, 1042 ["Abrasions, lacerations, and bruising can constitute great bodily injury"].) A " 'plain reading' " of the statute " 'indicates the Legislature intended it to be applied broadly[.]' " (*People v. Cross, supra,* 45 Cal.4th at p. 66, fn. 3.)

4

The determination of whether a victim has suffered physical harm amounting to great bodily injury "is not a question of law for the court but a factual inquiry to be resolved by the jury. [Citations.]" (*People v. Cross, supra,* 45 Cal.4th at p. 64.) If there is sufficient evidence to sustain the jury's finding of great bodily injury, " ' "we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' [Citations.]" (*People v. Escobar, supra,* 3 Cal.4th at p. 750.)

Applying these principles here, the evidence, while not overwhelming, was sufficient. Actual injury is not an element of assault with force likely to produce great bodily injury. (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028; *People v. Griggs* (1989) 216 Cal.App.3d 734, 739-740; CALCRIM No. 875.) Therefore, Arevalo's injury was not inherent in the offense itself. Relying on language in *Escobar*, Stewart argues that to fall within section 12022.7's ambit, an injury must be "of the type not routinely associated with the crime, but [must] reflect a degree of brutality and violence substantially beyond that necessarily present in the offense." The fact an injury is unusually brutal is certainly a relevant consideration for the jury. However, we do not understand *Escobar* to have held that such a circumstance is required, nor does the statute suggest such an element. All that is necessary is that the injury is beyond that inherent in the offense itself. (See *People v. Escobar, supra,* 3 Cal.4th at pp. 746-749.)

Arevalo testified that as a result of Stewart's punch, her eye became "really swollen, the whole eye was really black." The injury was painful. The punch caused her to feel "really dizzy" and prompted other passengers to insist she sit down until an officer arrived. Fire department personnel examined her for 15 to 20 minutes and treated her with an ice pack. Once home, she applied cold meat to the injury. Photographs of the injury were admitted into evidence. Arevalo's testimony was corroborated by a deputy sheriff, who observed that her eye was swollen, red, and discolored minutes after the incident. When Arevalo spoke with the deputy, she was holding her eye, was crying, and complained of pain. Her eye remained black and blue for two to three weeks. She had headaches for approximately two weeks as a result of the blow. This evidence was sufficient to prove great bodily injury within the meaning of section 12022.7. (See

5

*People v. Washington, supra,* 210 Cal.App.4th at p. 1047; *People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836 [bruising and swelling of the victim's hands, arms, and buttocks was sufficient to establish section 12022.7 enhancement]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 734 [multiple abrasions, lacerations, and bruises on back and neck, and swollen and bruised eye and cheek, constituted great bodily injury]; *People v. Escobar, supra,* 3 Cal.4th at pp. 744-745, 752 [multiple bruises and abrasions, stiff neck, and severe vaginal soreness were sufficient to prove section 12022.7 enhancement].)

Stewart argues that because Arevalo did not suffer broken bones, bleeding, cuts, scarring, loss of consciousness, or permanent damage, and failed to seek medical care, her injuries were insubstantial or insignificant. While these were all factors for the jury's consideration, none required a finding that, as a matter of law, the evidence was insufficient. (See *People v. Wade* (2012) 204 Cal.App.4th 1142, 1150 [great bodily injury does not require a finding that the injury necessitated medical treatment]; *People v. Lopez* (1986) 176 Cal.App.3d 460, 463-465 & fn. 5 [great bodily injury finding was supported by the evidence despite the fact the victims did not seek medical treatment]; cf. *People v. Cross, supra,* 45 Cal.4th at pp. 65-66 [medical complications not required to support finding of great bodily injury].) " ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.] Where to draw that line is for the jury to decide." (*Cross*, at p. 64; *People v. Escobar, supra,* 3 Cal.4th at p. 752.) Stewart's jury was instructed on the meaning of great bodily injury, including that the injury must be "greater than minor or moderate harm" (CALCRIM No. 3160), and concluded Arevalo's injuries met this threshold. We cannot say, as a matter of law, that the jury's conclusion was unsupported by the evidence.

*People v. Martinez* (1985) 171 Cal.App.3d 727 and *People v. Duke* (1985) 174 Cal.App.3d 296, cited by Stewart, are distinguishable. In *Martinez*, the evidence was insufficient to support a great bodily injury enhancement where the victim—who was slightly stabbed through two shirts and a " 'very heavy coat' "—suffered a minor laceration that was " 'almost like a pinprick.' " (*Martinez*, at pp. 735-736.) The

prosecutor at trial agreed the evidence was insufficient and requested that the court strike the allegation. (*Id.* at pp. 735-736; see also *People v. Le, supra,* 137 Cal.App.4th at p. 59.) Arevalo's injury was much more significant: she experienced immediate pain and dizziness, and had a black eye and headaches for at least two weeks.

In *Duke,* the defendant was charged with assault with force likely to produce great bodily injury after he accosted an employee in an unoccupied office, grabbed her around the neck in a headlock, and touched her breasts through her sweater. (*People v. Duke*, *supra*, 174 Cal.App.3d at pp. 299, 302.) The victim's only injury was a "laceration to her ear lobe caused by her earring being pushed against her ear." (*Id.* at p. 302.) The question before the court was the sufficiency of the evidence to support the charged crime, not a great bodily injury enhancement. *Duke* concluded the headlock did not constitute force likely to produce great bodily injury, because the defendant "only grabbed [the victim] momentarily and released her almost immediately," and she was "in no danger from the force actually exerted." (*Id.* at p. 303.) *Duke* thus considered a factual situation distinguishable from that in the case at bar. In any event, the injury suffered by the victim in *Duke*—a small cut to her ear caused by an earring—is far less severe than the black eye at issue here, the effects of which lingered for weeks. The evidence was sufficient.

c. *The evidence was sufficient to support the misdemeanor sexual battery conviction.*

Stewart next contends the evidence was insufficient to prove he was the person who committed the sexual battery. Again, we disagree.

"Misdemeanor sexual battery (in violation of § 243.4, subd. (e)) requires a showing that the defendant touched an intimate part of another person, the touching was against that person's will, and was done with specific intent to cause sexual arousal, gratification or abuse." (*People v. King* (2010) 183 Cal.App.4th 1281, 1319; *People v.*

7

*Smith* (2010) 191 Cal.App.4th 199, 207.)[3] " 'Intimate part' " includes the buttocks. (§ 243.4, subd. (g)(1).) " '[T]ouches' " means "physical contact with another person, whether accomplished directly, through the clothing of the person committing the offense, or through the clothing of the victim." (§ 243.4, subd. (e)(2).)

Stewart does not dispute that the evidence was sufficient to establish the foregoing elements of the offense. However, he urges that there was insufficient evidence he was the perpetrator. He complains that the train was crowded and Arevalo was surrounded by numerous passengers. She did not actually see who grabbed her, but simply assumed he was the culprit. Stewart argues that in order to find him guilty, the jury must have engaged in "impermissible speculation."

To the contrary, the evidence was sufficient. The evidence showed Stewart sat next to Arevalo on the Orange Line bus. He persisted in talking to her during the 10-minute ride to the metro station, even though Arevalo did not speak English and ignored him. When she hurried to the subway train, a three-minute walk, Stewart followed, entered the same train car, and stood within a few feet of her. When Arevalo was grabbed, she immediately turned and found herself face-to-face with Stewart. He then tugged at her purse, from a distance of approximately 20 inches away. From these facts, a reasonable jury could readily infer that Stewart was the culprit. His unusual interest in Arevalo, coupled with his persistence in following her onto the crowded train and positioning himself close to her, provided strong circumstantial evidence he was the assailant. His conduct when confronted—grabbing at her purse and punching her—was inconsistent with innocence. There was no evidentiary deficit.

---

[3]     Section 243.4, subdivision (e) provides in pertinent part: "(1) Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery . . . ."

2. *The trial court did not abuse its discretion by denying Stewart's* <u>*Romero*</u>
*motion.*

At sentencing, Stewart moved to strike his 1993 conviction for commission of a lewd act upon a child under 14, on the ground it was temporally remote. The People countered that Stewart had a long history of predatory behavior against young women, and therefore did not fall outside the spirit of the Three Strikes law. After considering the parties' arguments, the trial court concluded "[t]his is an inappropriate case for the striking of a strike allegation," and denied the motion. The court observed, when imposing sentence, that Stewart had a record of violence and had inflicted emotional distress and physical injury on the victim in the instant case. Further, Stewart's performance on probation or parole had been unsatisfactory. The court explained: "The facts of this case, when seen in the context of the defendant's criminal history and underlying facts of his past convictions, suggest that he does present a risk of danger to the community, particularly to young women and girls."

Stewart contends the trial court abused its discretion by denying his *Romero* motion. In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation. (§ 1385; *People v. Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 504; *People v. Meloney* (2003) 30 Cal.4th 1145, 1155.) A trial court's refusal to strike a prior conviction allegation is reviewed under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) Under that standard, the party seeking reversal must " 'clearly show that the sentencing decision was irrational or arbitrary.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) It is not enough to show that reasonable people might disagree about whether to strike a prior conviction. (*Carmony*, at p. 378.) Only extraordinary circumstances justify a finding that a career criminal is outside the Three Strikes law. (*Ibid.*) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

When considering whether to strike prior convictions, the relevant factors a court must consider are "whether, in light of the nature and circumstances of his present

felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)

The record before us reveals no basis for the conclusion that Stewart falls outside the spirit of the Three Strikes law. Stewart's criminal history is lengthy and troubling. In October 1992 he was charged with kidnapping and was convicted of false imprisonment with violence, apparently as the result of a plea bargain. According to a 1992 probation report, in that incident Stewart pulled a 13-year-old girl who was waiting for a bus into his car, drove off with her, and insisted that she disrobe. She escaped by jumping from the vehicle. Fortunately, Stewart was apprehended when a retired deputy sheriff observed the incident and followed him. In November 1993, Stewart was convicted of committing a lewd or lascivious act with a child under 14 years of age, and sentenced to three years in prison. In that incident, he engaged in a sexual relationship with a 13-year-old girl and allegedly raped her on one occasion. After his initial parole he was returned to prison twice, in February 1996 and July 1997, for parole violations. In 1995, Stewart was convicted of contributing to the delinquency of a minor and grand theft of a vehicle, and was placed on probation. In that incident, officers discovered Stewart inside a stolen rental car with a 13-year-old girl. In 2005, Stewart was convicted of carrying a concealed dirk or dagger and sentenced to two years in prison. As the probation report explained, 38-year-old Stewart had a "known history of criminal activity and anti-social behavior over a nineteen-year period. . . . The defendant has had numerous state prison commitments and a return to state prison for parole violations. . . . [¶] . . . He is viewed as a serious and dangerous threat to the community, based on his involvement in the

present offense, and his criminal history." Stewart's crimes did not result from a single period of aberrant behavior. (Cf. *People v. Garcia* (1999) 20 Cal.4th 490, 503.) His criminal history demonstrates he is "the kind of revolving-door career criminal for whom the Three Strikes law was devised." (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320; *People v. Pearson* (2008) 165 Cal.App.4th 740, 749.)

Stewart argues that his strike prior was remote in time, having been suffered in 1993, when he was 21 years old. However, the fact a prior is somewhat remote has little mitigating force "where, as here, the defendant has led a continuous life of crime" after suffering the prior conviction. (*People v. Pearson, supra*, 165 Cal.App.4th at p. 749; *People v. Williams, supra,* 17 Cal.4th at p. 163; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [20-year-old felony conviction was not a mitigating factor given defendant's criminal recidivism; a trial court cannot be expected to "simply consult the Gregorian calendar with blinders on"].) The lapses in Stewart's criminal history appear largely due to the fact he was incarcerated for a considerable portion of the intervening period.

Stewart also contends that his conduct in the instant crime was not egregious. He argues that Arevalo's injury was "fairly minor," characterizes the punch as unintentional, and points out that he denied committing the sexual battery. This characterization of the facts, of course, was rejected by the jury. As we have explained, the injury was not insignificant. Nor was Stewart's offense trivial: he followed and sexually battered a young woman. The 23-year-old victim was under five feet tall, weighed approximately 100 pounds and, according to the probation report, "look[ed] like a kid." Stewart, on the other hand, is a "big guy," weighing approximately 230 pounds. Stewart's choice to target a much smaller, young-looking victim is especially troubling in light of his prior conviction for lewd conduct with a child. We do not view Stewart's offense as minor.

Finally, Stewart argues that his "background, character and prospects demonstrate his prospects for the future are good" and the trial court failed to evaluate the "particulars of [his] character and prospects." He contends he is a high school graduate and has attended college, had previously been employed in a variety of jobs, and attends church

11

services.  Stewart's contention that the trial court failed to properly consider his circumstances is meritless.  We presume the trial court considered all the relevant factors in the absence of an affirmative record to the contrary.  (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)  The trial court indicated it had reviewed the sentencing memoranda, and a probation report containing information regarding Stewart's education and employment was attached.  Thus, there is no basis to assume the court failed to consider the particulars of Stewart's prospects and character.  Assuming arguendo that Stewart's characterization of his circumstances is accurate, nothing about his educational or employment background required the trial court to grant his *Romero* motion.  "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling . . . ."  (*Id*. at p. 310.)  Such is the case here.  No abuse of discretion is apparent.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

12