Filed 12/3/14  P. v. Garnett CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD ANDREW GARNETT,<br><br>    Defendant and Appellant. | A140375<br><br>(Humboldt County<br>Super. Ct. No. CR1205767) |

Richard Andrew Garnett appeals from a judgment convicting him of, among other things, battery with serious bodily injury and assault with a deadly weapon with an enhancement for personal infliction of great bodily injury. He contends there is insufficient evidence to support the great bodily injury enhancement and serious bodily injury allegation. We affirm.

**Factual and Procedural History**

Defendant was charged in count 1 with attempted murder in violation of Penal Code[1] sections 664 and 187, subdivision (a), and in counts 2 and 3 with assault with a deadly weapon in violation of section 245, subdivision (a)(1). The information also alleged, as to each count, that defendant personally inflicted great bodily injury upon the victims within the meaning of section 12022.7, subdivision (a).

---

[1] All statutory references are to the Penal Code unless otherwise noted.

The following evidence was presented at trial:

In November 2012, the victims, Jessica Robenalt and Darren Harvey, rented a room from defendant and his girlfriend. The living situation, however, was not a good one and in early December Jessica gave defendant notice that she and Darren would be moving out. Jessica testified that, after receiving her notice, defendant became hostile. He "banged on my door aggressively and called us something along the lines of selfish and spoiled for not wanting to live there."

On the afternoon of December 8th, a few days after delivering the notice, defendant attacked Jessica and Darren in the kitchen. As Jessica was standing by the refrigerator, she "just heard this like stomping noise, and the whole trailer shook, and the next thing I know, I am bleeding." Jessica had been stabbed in the chest and was "covered in blood." Darren, who was standing next to Jessica, saw defendant lunge at Jessica and stab her with a kitchen knife with a blade "four to five inches" long. Defendant then hit Darren in the face with a wine bottle.

Jessica ran to the telephone in the front room and called 911. As soon as Jessica reached the 911 dispatcher, defendant ran up behind her and "stabbed [her] in the back." He pushed her, causing her to fall, face first, to the floor. As she fell, defendant stabbed or nicked her in the back of her leg with the knife. While Jessica lay face down on the floor, defendant tried to take the telephone away from her. Darren testified that as she was being attacked, Jessica was "screaming frantically." Darren tried to distract defendant so Jessica could run to her bedroom, where she ran and locked the bedroom door. Defendant and Darren continued to engage in a confrontation until defendant fled to the greenbelt behind the backyard.[2]

---

[2] Because defendant challenges only the sufficiency of the evidence to support the great bodily injury enhancement and serious bodily injury allegation with regard to the counts involving Jessica as the victim, we need not detail the considerable evidence presented at trial regarding the confrontation between Darren and defendant after Jessica locked herself in her bedroom.

Jessica ran out of the home once she saw defendant was gone. She was hysterical and covered in blood from "head to toe, in need of medical attention." She left blood on the banister of the home and on a gate she climbed over to escape. She was bleeding from her chest and a neighbor put a towel on her wound. She was still bleeding when medical personnel arrived and cut off her shirt.

After the police arrived, they located and arrested defendant. He was read his *Miranda*[3] rights before making a statement to the police. Defendant told the arresting officer about prior incidents involving Jessica and Darren, whom defendant described as "disrespectful." The officer testified that defendant told him, " "they had it coming, so [defendant] went to town on them in the kitchen.' " Defendant said, " 'I beat their asses' [and] 'I made that little boy scream like the bitch he is.' " Defendant admitted he inflicted all of the injuries on Jessica and Darren. He denied, however, that he used a knife claiming, "If there was a knife used, it was because they used it first."

Jessica and Darren were transported by ambulance to the hospital. Dr. Daniel Scott Diamond was working at the emergency room of the hospital on December 8th when Jessica was admitted to the hospital. She had stab wounds on her right shoulder, on her chest at the base of her neck, and several small ones on her leg. Although the stab wounds on her leg and shoulder were superficial, her chest wound was "deep or life-threatening." It penetrated at least to the bone and "tunneled" underneath her skin for five centimeters. Underneath and to the left of the wound, a lump of blood or hematoma had formed and was the size of a tennis ball. Jessica's chest felt "crunchy" when the doctor pressed on it, indicating that air was trapped between her lung and chest. Tests confirmed that the top of her lung was bleeding and that she had a small pneumothorax, or collapse of the lung, which caused air to escape the lung into surrounding tissue. Jessica was admitted to the hospital for observation and was later discharged when there was no evidence of bleeding and her pneumothorax appeared stable. She was prescribed antibiotics and pain medication. When she saw the doctor again a week later, the

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

hematoma was "still there, [but] slightly softer." However, it "was liquefying and starting to leak out the wounds," so the doctor sutured her wounds. A week after that the hematoma was smaller and appeared to be improving, so the doctor removed the sutures.

Defendant testified at trial that Jessica made a comment that provoked him to throw two glasses at her and Darren. He denied possessing a knife during the incident and denied stabbing Jessica or smashing a bottle against Darren's face.

On count 1, the jury found defendant not guilty of attempted murder of Jessica but guilty of the lesser included offense of battery with serious bodily injury in violation of section 243, subdivision (d). The jury found defendant guilty of assault of Jessica with a deadly weapon as charged in count 3 and found the related great bodily injury enhancement allegation to be true. The jury was deadlocked and unable to reach a verdict as to count 2, the assault of Darren, and the court declared a mistrial as to that count. Thereafter, pursuant to a negotiated disposition, defendant pled guilty in count 2 to the lesser offense of battery with serious bodily injury.

The court sentenced defendant to the upper term of imprisonment of four years for his conviction of assault with a deadly weapon in count 3 and imposed a consecutive sentence of three years for the great bodily injury enhancement. The court imposed a concurrent four-year term for defendant's conviction in count 2. Pursuant to section 654, the court stayed defendant's sentence on count 1.

Defendant timely filed a notice of appeal.

## Discussion

As noted, the jury found that during commission of the assault upon Jessica, defendant personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a) and committed a battery causing serious bodily injury within the meaning of section 243, subdivision (d). Defendant contends the evidence was insufficient to establish the victim's injuries constituted great or serious bodily injury.[4]

---

[4] Defendant acknowledges that "serious bodily injury" and "great bodily injury" have substantially the same meaning (*People v. Sloan* (2007) 42 Cal.4th 110, 117; *People v.*

4

Section 12022.7, subdivision (f), defines " 'great bodily injury' " as "a significant or substantial physical injury." (*People v. Cross* (2008) 45 Cal.4th 58, 63 (*Cross*); *People v. Escobar* (1992) 3 Cal.4th 740, 749–750 (*Escobar*).) To be considered significant or substantial, the injury need not cause permanent, prolonged, or protracted disfigurement, impairment, or loss of bodily function. (*Escobar,* at p. 750.) It need not meet any particular standard for severity or duration, but need only be "a substantial injury beyond that inherent in the offense itself[.]" (*Id*., at pp. 746–747, 750.) "An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.' [Citations.]" (*People v. Washington* (2012) 210 Cal.App.4th 1042, 1047.) "Proof that a victim's bodily injury is 'great'—that is, significant or substantial within the meaning of section 12022.7—is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." (*Cross*, at p. 66.)

"It is well settled that the determination of great bodily injury is essentially a question of fact, not of law. ' "Whether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' " (*Escobar, supra,* 3 Cal.4th at p. 750.)

Applying these principles here, the evidence undoubtedly supports the jury's finding. Defendant's characterization of Jessica's injury as "moderate" is contradicted by the substantial medical testimony in the record, summarized above, as well as by Jessica's testimony about the pain and suffering caused by the injuries. Accordingly, we shall affirm the judgment.

---

*Santana* (2013) 56 Cal.4th 999, 1008) and that in this appeal, he treats the terms as defining the same type of injury.

## Disposition

The judgment is affirmed.

_____
Pollak, J.


We concur:


_____
McGuiness, P. J.


_____
Jenkins, J.