Filed 3/3/21  P. v. Jones CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B302475 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA032267) |
| v. | |
| DEVIN DESHON JONES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and petitioner Devin Deshon Jones (defendant) appeals from the denial of his petition to recall his sentence pursuant to Penal Code section 1170.126,[1] and to resentence him as a second strike offender. He contends that the order was not supported by substantial evidence. Finding no merit to defendant's contention, we affirm the order.

## BACKGROUND

### The conviction and subsequent petition

In 1995, defendant was convicted of willful infliction of corporal injury on his spouse (count 1), in violation of section 273.5, subdivision (a), and making terrorist threats (count 2) in violation of section 422. The court found true the allegation pursuant to section 667, subdivision (b) through (i), the "Three Strikes" law, that defendant had suffered two prior serious felony convictions. On May 8, 1995, the trial court sentenced defendant to a term of 25 years to life in prison on count 1 and a concurrent term of 25 years to life on count 2. Defendant's conviction was affirmed on appeal in *People v. Jones* (Aug. 12, 1996, B093278 [nonpub.opn.]).

In 2013, defendant filed a petition for resentencing as a second strike offender under section 1170.126 (Proposition 36, the Three Strikes Reform Act of 2012), on the ground that corporal injury to a spouse and criminal threats were neither serious nor violent felonies in 1995 under the definitions in section 1192.7, subdivision (c) or section 667.5, subdivision (c). The trial court denied the petition, finding defendant ineligible for resentencing because a violation of section 422 was a serious felony at the time

_____

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

of the petition.[2] This court reversed the trial court's order on the ground that criminal threats were not listed as a serious felony at the time of defendant's commission of the crime or at the time of his conviction, and the matter was remanded with directions to redetermine defendant's eligibility. (*People v. Jones* (June 17, 2014, B251204 [nonpub. opn.]).)

On remand the trial court issued an order to show cause and received further briefing. After the prosecution filed its opposition, defendant requested several extensions of time and filed a bifurcated reply in October 2017. In the meantime the California Supreme Court issued *People v. Johnson* (2015) 61 Cal.4th 674 (*Johnson*), which held that for purposes of determining eligibility for resentencing under section 1170.126, the classification of an offense as serious or violent is based on the law as of November 7, 2012, the effective date of Proposition 36. (*Id.* at p. 683.)[3] The trial court heard the arguments of counsel on August 26, 2019, and took the matter under submission.

On October 31, 2019, the trial court ruled that defendant was again ineligible for resentencing under section 1170.126. The court concluded that the evidence showed beyond a reasonable doubt that defendant intended to, and did, cause great

_____

[2] A violation of section 422, was added to the list of serious felonies by Proposition 21, effective March 8, 2000. (§ 1192.7, subd. (c)(38).)

[3] Here, defendant is not challenging the trial court's ineligibility finding on count 2, making terrorist threats. His appeal is limited to count 1, willful infliction of corporal injury on his spouse, in violation of section 273.5.

bodily injury to the victim, and that he was therefore ineligible for resentencing, pursuant to section 1170.126, subdivision (e)(2).

Defendant filed a timely notice of appeal from the order.

**The trial court's findings**

In its opposition to the petition, the prosecution set forth relevant trial testimony at length, and defendant filed a copy of the reporter's transcript of the trial testimony.  The trial court issued a memorandum of decision summarizing the trial testimony in relevant part as follows:

> "The commitment offense on [*sic*] began as an argument between Petitioner and his wife, Patricia [W.] . . . .  On September 18, 1994, Patricia lived in her home with her and Petitioner's two young daughters, and Petitioner's mother, Sherrell Christmas, and Petitioner's two sisters, Nina and Tiffany Jones.  (RT at pp. 46-49.)  While Petitioner still had belongings at the home, he would come and go, not sleeping at the home regularly.  (RT at pp. 48-49.)  At around 7:45 a.m. that morning, Patricia was asleep with her two daughters when she woke to a loud knock at the door and Petitioner's voice telling someone to open the door.  (RT at pp. 50-51.)  Soon after, Petitioner came into her bedroom and asked her to get up.  (RT at p. 52.)  At that time, she and her youngest daughter got out of the bed, and Petitioner started talking to Patricia.  (RT at p. 53.)  At some point they began arguing, but Patricia did not remember many details around this point in the argument.  (RT at p. 53.)  Patricia 'somehow' ended up on the bed, and only recalled Petitioner pushing her once.  (RT at pp. 53-54.)  When asked if he did anything else to her that day, Patricia did not 'recall.'  (RT at p. 54.)

"After being pushed onto the bed, Patricia recalled leaving the bedroom to use the phone in the hall, however she did not end up using it. (RT at p. 54.) The two continued arguing and ended up in another bedroom with Petitioner moving toward Patricia, and Patricia moving backward. (RT at p. 55.) Once they were in that room, Petitioner shut the door. (*Id*.) The two were still arguing, perhaps about Patricia 'seeing other people or a pager or something.' (RT at pp. 55-56.) Patricia was upset and crying and denied seeing other people. (RT at p. 56.) While in that room, Patricia thought Petitioner may have pushed her 'probably once,' and had no recollection of anything else he may have done to her at that time. (RT at p. 57.)

"At that point, Patricia was so frightened by the argument she was having with Petitioner that she ran to her neighbor's home in her pajamas to use the phone to call 911. (RT at pp. 57-59.) Though she was frightened enough to run to the neighbors to call 911, according to Patricia's testimony, Petitioner never threatened her or did anything more than push her two times and yell at her. (RT at pp. 59, 103-104.) Initially, Patricia recalled the paramedics arriving in an ambulance, but did not recall the police coming or ever speaking to the police that day. (RT at pp. 60, 77-78, 110-111.) Patricia later recalled speaking to one male officer inside her neighbor's home, telling him she needed an ambulance, but did not tell him anything that happened with Petitioner. [Fn. 5: "Patricia did not recall testifying at the preliminary hearing that she was 'screaming and hollering and panicking' while speaking to police and paramedics."] (RT at pp. 112, 117, 120, 122.)

"According to Patricia's trial testimony, she had injuries on her leg and her collarbone, both sustained from falling outside the house while running to the neighbor's house.  (RT at pp. 61-62.)  She noticed no other pain or bruising as a result of her encounter with Petitioner.  (RT at p. 63.)  When pressed at trial, Patricia recalled perhaps having 'one or two' black eyes and a bump on her head in the days following the argument with Petitioner.  (RT at pp. 65-67, 114.)  She believed she must have sustained the black eye(s) when she fell outside.  (RT at p. 66.)  Patricia stated that she did not want to be in court testifying at trial.  (RT at p. 70.)

"At trial, Patricia's recollection was refreshed using her preliminary hearing testimony.  (RT at pp. 70-71.)  At trial, however, Patricia stated her statements at preliminary hearing were not true.  (RT at pp. 72-73, 77-78, 81-83, 137.)  She confirmed that during her preliminary hearing testimony, she was emotional, at times crying.  (RT at pp. 116-117.)

"At the preliminary hearing Patricia testified that, on the morning of the offense, Petitioner came into the bedroom, snatched the covers off the bed, grabbed her and swung her by the hair.  (RT at p. 72.)  Next, Petitioner left the room, and came back with a steak knife, swung it at her chest, and said he was going to kill her.  [Fn. 6:  "At trial, she testified both that she did not remember if Petitioner had a knife and that he did not have a knife. (RT at pp. 73-74, 76, 103.)"]  (RT at pp. 73-74, 187, 189.)  Using the knife, he started to rip up Patricia's clothes, but the knife broke while he was using it on her clothing.  (RT at

6

pp. 76, 188-190.) While the two were in the second bedroom, Petitioner closed the door and began choking Patricia, grabbed her by her left collarbone, and then hit her with fists in the face and head three or four times. (RT at pp. 80-82, 190-191.) While he grabbed and pulled on her left collarbone, Petitioner said he was going to break her bones. (RT at pp. 83, 106, 191.) Patricia screamed, 'Help me.' (RT at p. 118.) At that point, Petitioner's mother entered the room and told Petitioner to stop and leave her alone. (RT at pp. 83-84.)

"Patricia testified that she lied at the preliminary hearing was [*sic*] because she was upset with Petitioner regarding the argument they had the day of the offense and that he may have been seeing someone else. (RT at pp. 77, 81, 137.) At the time of the preliminary hearing, Patricia intended to seek a divorce from Petitioner. She started the process for obtaining a restraining order against Petitioner, but never completed the process. (RT at pp. 126-127.) At the time of trial, she decided she cared for Petitioner and wanted him to have a relationship with their children. (RT at pp. 125-126.)

"As a result of Petitioner's actions that day, Patricia had a 'knot' on her head, a swollen jaw, two black eyes, and scrapes and bruising to her left collarbone. (RT at pp. 65-67, 84-86, 192.) She also took pain medication prescribed at the hospital for a couple of days. (RT at p. 107.) At trial Patricia testified she required the medication for her leg, but at the preliminary hearing she testified she required the pain medication for the pain in her head as a result of the beating. (RT at pp. 108, 192.)

7

"Patricia was asked at trial if she was afraid of Petitioner, his friends, or his family and she that [*sic*] testified she was not. (RT at p. 128.) Patricia was then shown handwritten notes she made during a conversation with Petitioner's father. She testified she made the notes because the conversation 'bothered' her. (RT at pp. 129-130.) The notes indicated Petitioner's father said, 'It's not worth it for beating up someone,' and 'nothing would prevent [Petitioner] from calling up someone to get you at your job or anywhere.' (RT at pp. 130-131.) Patricia was also shown another handwritten note she made as a result of a second conversation with Petitioner's father, where he recited the address of Patricia's mother and Patricia's workplace.[4] (RT at pp. 131-132.) On that note, there was also a reference to a conversation with Petitioner, where Petitioner said, 'If his life gets uncomfortable, your [*sic*] is too,' and 'If you went to court, then you are not going to be working here anymore and they better move you somewhere else.' (RT at pp. 133, 135.)

"Compton Police Officer Timothy Dobbin also testified at trial. He testified that on September 18, 1994, at about 8:25 a.m. he came in contact with a very upset Patricia . . . . (RT at pp. 143-145, 147.) Upon seeing her, he noticed she had blood coming from her mouth and lower lip, bruises and marks around both sides of her face and jawline, and bruising on the top of her cheek bone, just below her eye. (RT at pp. 146-147.) Officer Dobbin also

---

[4]     Patricia testified that it was defendant who recited the addresses in a telephone call he made to her.

8

noticed bruising on her left collarbone. (RT at pp. 147-148.) Patricia was distraught and crying. (RT at p. 148.)

"Patricia told Officer Dobbin that her husband came into the house around 7:45 a.m. and began yelling at her and shouting profanities at her. Petitioner came into the back bedroom and began to ransack the bedroom, throwing clothing everywhere. She asked him why he was acting that way, and he turned on her, becoming very aggressive and began striking her on the head, face, and chest, specifically her left collarbone, with closed fists. She had sustained an injury to her right knee when she fell while running outside to the neighbor's house. The attack lasted less than ten minutes. (RT at pp. 149-152.) Patricia pointed out Petitioner as the person who attacked her. (RT at pp. 153-154.)

"Officer Dobbin testified that he also spoke to Petitioner that morning and Petitioner stated that he lost control of himself in his anger and he struck his wife to stop her from seeing other men. (RT at pp. 155-156.)"

## DISCUSSION

Defendant contends that insufficient evidence supported the trial court's finding that he intended to inflict great bodily injury when he committed the crime of willful infliction of corporal injury on his spouse.

Proposition 36 authorizes prisoners serving third strike sentences whose current offense is not a serious or violent felony, to petition for recall of the sentence and for resentencing as a second strike case. (§ 1170.126, subd. (f); see §§ 667, subd. (e)(1), 1170.12, subd. (c)(1); *Johnson*, *supra*, 61 Cal.4th at pp. 679-680.) As the prosecution argued in opposition to the petition, a

defendant is not qualified for such relief if during the current offense, he "'was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person.' (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)" (*Johnson*, at pp. 681-682.) Once the defendant shows that he was not convicted of a serious or violent felony, the prosecution bears the burden of proving beyond a reasonable doubt that defendant is in fact ineligibile. (*People v. Frierson* (2017) 4 Cal.5th 225, 234-235.)

In reviewing an order denying relief under Proposition 36, we defer to the trial court's determination if it is supported by substantial evidence. (*People v. Perez* (2018) 4 Cal.5th 1055, 1063 (*Perez*).) "[W]e view the evidence in the light most favorable to the trial court's findings without reassessing the credibility of witnesses or resolving evidentiary conflicts. [Citations.]" (*People v. Thomas* (2019) 39 Cal.App.5th 930, 935-936 (*Thomas*), citing *Perez, supra*, at p. 1066.) Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "With regard to proof of intent, our Supreme Court has explained that although "'[e]vidence of a defendant's state of mind is almost inevitably circumstantial,'" such evidence may nevertheless be sufficient by itself to support a court's factual finding of intent." (*Thomas, supra*, at p. 936, quoting *People v. Manibusan* (2013) 58 Cal.4th 40, 87.) "Even where . . . the evidence of guilt is largely circumstantial, our task is not to resolve credibility issues or evidentiary conflicts, nor is it to inquire whether the evidence might ""be reasonably reconciled with the defendant's innocence."" [Citations.] The relevant inquiry is whether, in light of all the evidence, a reasonable trier

of fact could have found the defendant guilty beyond a reasonable doubt.  [Citation.]"  (*People v. Gomez* (2018) 6 Cal.5th 243, 278.)

Defendant's first argument appears to be that because a defendant can be convicted of corporal injury to a spouse under section 273.5, even if the injury is minor and does not amount to great bodily injury, no reasonable inference can arise from a section 273.5 conviction that defendant *intended* to cause great bodily injury.  Defendant also argues that because the prosecutor did not allege a great bodily injury enhancement in the information or attempt to prove at trial that the victim suffered great bodily injury, it must be inferred that the record of conviction does not contain sufficient evidence to support such a finding.

"'[W]here one applies force to another in a manner reasonably certain to produce, and actually producing, great bodily injury, the requisite intent can be presumed, since the intent with which an act is done may be inferred from the circumstances attending the act, including the manner in which the act was done and the means used.'"  (*Thomas*, *supra*, 39 Cal.App.5th at p. 938, quoting *People v. Phillips* (1989) 208 Cal.App.3d 1120, 1124.)  Although an intent to inflict great bodily injury may be reasonably inferred from the infliction of such injury, the actual infliction of great bodily injury is a not prerequisite for finding *intent* to cause great bodily injury.  (*Thomas*, *supra*, at p. 937.)  Indeed, even where a great bodily injury enhancement is found not true by the jury, a review of the record of conviction may support a finding that the defendant intended to cause great bodily injury and is thus ineligible for resentencing.  (*Id*. at p. 938.)

Here, substantial evidence supports the trial court's finding that defendant inflicted great bodily injury, and the circumstances of the beating further support the court's conclusion that defendant intended to cause great bodily injury. Patricia's trial and preliminary hearing testimony demonstrates that after defendant pushed her down onto the bed of the first bedroom, he swung a steak knife at her and said he was going to kill her. When she went into the hallway, he backed her up into the second bedroom, closed the door, choked her, grabbed her by her left collarbone and pulled on it for about a minute, saying he was going to break her bones. He then struck her with fists in the face and head three or four times. Patricia testified at preliminary hearing that she suffered a knot on the head, two black eyes, a swollen jaw, and bruises on her left collarbone area. It took about a week for the bruising and swelling to subside and she still had head pain at the time of the preliminary hearing. Soon after the beating she described it to Officer Dobbin, who observed blood coming from her lower lip, marks all along the sides of her face and jaw line, and bruises all over her face and the left collarbone area of her chest. Patricia was in such pain that she asked Officer Dobbin for an ambulance. Defendant admitted to Officer Dobbin that he struck Patricia.

Defendant suggests that because he did not succeed in breaking any of Patricia's bones or in killing her, it must be concluded that his intention was merely to frighten her. We disagree. Injuries similar to Patricia's, a "swollen jaw, bruises to head and neck and sore ribs" have been found to support finding of great bodily injury. (*People v. Escobar* (1992) 3 Cal.4th 740, 752.) As defendant inflicted great bodily injury upon Patricia, his

intent to do so may be reasonably inferred. (*Thomas*, *supra*, 39 Cal.App.5th at p. 937.)

Defendant also invites this court to disbelieve Patricia's preliminary hearing testimony because it conflicted with much of her trial testimony, and she claimed at trial that she had lied at the preliminary hearing. As the reviewing court, we do not resolve credibility issues or evidentiary conflicts. (*People v. Gomez*, *supra*, 6 Cal.5th at p. 278.) The trier of fact is entitled to give the statements of a recanting victim, like those of any other witness, whatever weight it deems appropriate, or to disregard them altogether. (See *Thomas*, *supra*, 39 Cal.App.5th at p. 937.) In *Thomas*, we observed that "the trial court had good reason to put little stock in the [conflicting] statements," as the victim felt sorry for the defendant, did not want him to go to prison, and wrote to him that he was prepared to testify falsely. (*Ibid*.)

Here too, the trial court had good reason to reject Patricia's recantations and her claims of lack of recollection of events and injuries about which she testified at the preliminary hearing. The trial court also found evidence of Patricia's fear of defendant and his father, as a potential motive for her change in testimony. She made notes of telephone calls from defendant and his father which "bothered" her. The calls contained implied and explicit threats, such as the father's warning that "nothing would prevent [defendant] from calling up someone to get you at your job or anywhere." The trial court also noted that on a call from defendant, he said to Patricia, "'If his life gets uncomfortable, your [*sic*] is too,'" and "'If you went to court, then you are not going to be working here anymore and they better move you somewhere else.'"

Defendant further suggests that we should disbelieve Officer Dobbin's description of Patricia's injuries because he did not take photographs.  The reviewing court does not reweigh the evidence.  (*Perez*, *supra*, 4 Cal.5th at p. 1066.)  Unless it is physically impossible or inherently improbable, the testimony of a single witness, if believed by the trier of fact, is sufficient to sustain a judgment.  (*People v. Scott* (1978) 21 Cal.3d 284, 296.)  As defendant does not contend that Officer Dobbin's testimony regarding his observations was physically impossible or inherently improbable, we reject the suggestion that corroboration in the form of photographic evidence was necessary.

We have reviewed the entire record and conclude that the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that Patricia suffered great bodily injury and that defendant intended to inflict great bodily injury.  We thus defer to the trial court's findings and conclude that it did not err in ruling that defendant was disqualified for resentencing as a second strike offender.  (See *Perez*, *supra*, 4 Cal.5th at p. 1063.)

**DISPOSITION**

The order denying defendant's petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

CHAVEZ

We concur:


_____, P. J.

LUI


_____, J.

HOFFSTADT