Filed 8/23/22  P. v. Zinman CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUSTIN MARCUS ZINMAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B313764<br>(Super. Ct. No. 2021001112)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING (NO CHANGE IN JUDGMENT) |

THE COURT:

The opinion filed in the above-entitled matter on August 4, 2022, is modified as follows:

On page 5, the first sentence of the third paragraph beginning "Three days later" is modified to state:

Three days later, Breana's parents were at home with her brother when Cheryl noticed that someone appeared to be lingering at the front door.

This modification does not change the judgment.

Appellant's petition for rehearing is denied.

_____

GILBERT, P.J.          YEGAN, J.          PERREN, J.

Filed 8/4/22  P. v. Zinman CA2/6 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. JUSTIN MARCUS ZINMAN, Defendant and Appellant. | 2d Crim. No. B313764 (Super. Ct. No. 2021001112) (Ventura County) |

Justin Marcus Zinman appeals the judgment entered after a jury convicted him of making criminal threats (Pen. Code,[1] § 422) and stalking (§ 646.9, subd. (a)).  The jury also found true allegations that appellant had a prior serious felony conviction that also qualified as a strike (§§ 667, subds. (a)(1), (c)(1), & (e)(1), 1170.12, subds. (a)(1) & (c)(1)).  The trial court sentenced him to 11 years in state prison.  Appellant contends that his

---

[1] All statutory references are to the Penal Code.

criminal threats conviction must be reversed for insufficient evidence. We affirm.[2]

## STATEMENT OF FACTS

In 2017, appellant and Breana H. met while working at the Kohl's store in Simi Valley and subsequently entered into a romantic relationship. Following his graduation from college in the summer of 2019, appellant began living with Breana and her parents at their home in Simi Valley. After appellant moved in, he became preoccupied with religion and obsessed with government conspiracy theories. He told Breana that she lived in a "matriarchal" household and needed to leave.

Appellant and Breana's relationship ended in July or August of 2019, but they continued speaking intermittently until appellant moved away in December 2019. Breana eventually told appellant she was afraid of his behavior and wanted no further contact with him.

In August or September of 2020, appellant sent Breana an email to which she did not respond. Appellant subsequently sent Breana an Instagram message followed by text messages and phone calls from an Idaho number. Appellant texted that his "next step is to call your mom" to tell her that he planned to marry Breana and was "a worthy husband."

Breana did not respond to the Instagram message or phone calls, but eventually responded to the texts by telling appellant to stop texting her and that she would call him the next day when she was not at work. The following morning, appellant texted: "Have fun working in the most corrupt failing, work

---

[2] Appellant has also challenged the judgement in a petition for writ of habeas corpus, which we deny in a separate order.

establishment. And, by the way, outside California people know this pandemic is fake . . . . Trump 2020 Landslide."

On September 21, 2020, appellant sent Breana a text message accusing her of having a sexual relationship with his friend Tom. Appellant referred to Tom as a liar and alcoholic who "beat the shit out of" his girlfriends and told Breana "[m]aybe you two are perfect for each other." Although Breana had never met Tom in person, he had previously reached out to her about appellant.

By December 2020, Breana was receiving emails from appellant almost every day. In a December 13 email, appellant stated: "I had to do what I had to do to infiltrate you and your matriarchal household and family. . . . I will be returning to take you. . . . You are a property of me [*sic*]. Whether your family likes it or not, I will deal with them. . . . I will challenge your dad to a gentleman's dual [*sic*] if I have to. Maybe that will wake up the man in him, too, so he can start fucking your mom properly and chill her out." That same day, appellant sent another email message stating he could "take care" of Breana's grandmother, whom he called a "witch."

Five days later, appellant sent Breanna's mother Cheryl a text message stating that he was giving Breana "a taste of her own medicine" by subjecting her to "total manipulation" and added "I just wanted you to know the truth . . . since Breana has put me in a situation where I have to worry about having the FBI involved." Cheryl forwarded the text to Breana, who subsequently reported it to the police.

In a December 22 email, appellant told Breana that incest, pedophilia and rape are federal crimes and added "I am here to save you. I am your protector. . . . You have been harmed and I

3

want you to be healed.  Rape is not love.  Delta Force goes to the end of the earth to save and protect the vulnerable.  You can trust me.  I love you Queen B."  Although Breana did not initially understand what appellant meant, she subsequently realized he was falsely accusing her father of molesting her.  On December 25, appellant emailed Breana "I know what you're into.  Tom has always been gay for me, that's why he always went after the girls I get.  He wants to make me jealous, so I fucked him because he's a faggot."

Two days later, appellant sent an email with the subject heading "Still waiting for the FBI."  The email stated:  "If you decide to speak with me, you will have to submit to my rule and confess just how wrong you were about me. . . .  I give you the opportunity to be my queen.  This is the best offer you will ever get in your entire life.  Speak now or forever be denied your peace."  Breana interpreted the latter comment as a threat that he had to be with appellant "or else."

On January 7, 2021, appellant sent Breana an email stating "Treason against God.  Here you go, my lady.  Make America great again."  The message included an photograph of a noose accompanied by the statement "Ribbon to support the cure for treason."  Breana understood this to mean that appellant expected her to submit to him "as he had put it in words before, or else here is the noose."  She subsequently sent appellant a message telling him to stop contacting and harassing her.  The next day, appellant emailed a message stating that he had "stored" her "secrets and deleted e-mails" and that "[e]veryone will confess."  In another email, appellant referred to Breana's father as "a pedo" and asked if Breana loved Tom "[b]ecause I am getting ready to come take you as my wife caveman style."

On January 9, appellant sent Cheryl a message stating that he was going to come to her house, take Breana as his wife, and "fuck the shit out of her every day for the rest of [his] life." Appellant also accused Breana of having sex with her father and said he was coming to Simi Valley to "fuck the cum" of Breana's father "out of [her]." In another message that included the insignia "Central Security Service United States of America," appellant stated "[t]his is the badge I got for graduating from Berkeley at the top of my class. Surprise bitch. It happened when she was very young. This is the reason Breana has been a liar since she was a kid. . . . NSA is a signal intelligence operation. We are the best in the world and we have everything on everyone. If you don't trust my authority, call the dorks at the FBI. If I'm crazy, I will be thrown in jail for impersonating a federal intelligence officer."

That same day, appellant sent Breana an email message with the heading "Coming to your house to kidnap and rape you, bitch." The message stated, "Ha . . . . You better be ready, bitch. Call the FBI. Tell them America intelligence is coming." The message included a photograph of a bound nurse with a bag or hood over her head. Breana, who is a nurse, took the message as "an immediate threat" and feared for her safety. Appellant's admission of prior crimes including armed robbery, coupled with the fact that his current behavior was "so unhinged and unusual," led Breana to conclude "there's no telling what he would do or what he thought he could do."

Three days later, Breana was at home with her parents and brother when Cheryl noticed that someone appeared to be lingering at the front door. After looking outside, Breana's brother stated "Jesus Christ, it's [appellant]." Cheryl told

5

appellant, who had driven over 800 miles from Idaho, to leave. He did not do so. Cheryl then armed herself with a crowbar and called 911. When appellant was arrested at the scene, a large sheath knife was found attached to his belt. At trial, Breana and Cheryl both testified that they are still afraid of appellant.

In testifying in his own defense, appellant denied ever threatening Breana or intending to cause her fear. He claimed that his use of the words "kidnapping" and "rape" was "more a satirical play on the traditional marriage values." He also claimed that the image of the nurse with a hood over her head was merely intended to convey that nurses "may be victims of human trafficking."

## DISCUSSION

Appellant contends his criminal threats conviction must be reversed because the evidence is insufficient to support the jury's finding that he willfully threatened to commit a crime against Breana involving great bodily injury or death. We are not persuaded.

"In reviewing a challenge to the sufficiency of the evidence under the due process clause of the Fourteenth Amendment to the United States Constitution and/or the due process clause of article I, section 15 of the California Constitution, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Cole* (2004) 33 Cal.4th 1158, 1212.) "We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify

6

the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People. v. Albillar* (2010) 51 Cal.4th 47, 60.) It is well settled that "'[a] reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

"The elements of the crime of making a criminal threat are as follows: '"(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." [Citations.]' [Citation.]" (*In re A.G.* (2020) 58 Cal.App.5th 647, 653-654 (*A.G.*).)

"'[S]ection 422 requires that the communication must be sufficient "on its face and under the circumstances in which it is made" to constitute a criminal threat. . . .' [Citations.]" (*A.G.*, *supra*, 58 Cal.App.5th at p. 654.) "'[T]he determination whether a defendant intended his words to be taken as a threat, and

7

whether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone. The parties' history can also be considered as one of the relevant circumstances. [Citations.]' [Citation.]" (*People v. Butler* (2000) 85 Cal.App.4th 745, 754.)

Appellant challenges only the jury's finding on the first prong of the statute, i.e., that he willfully threatened to commit a crime against Breana resulting in death or great bodily injury. Great bodily injury is "'bodily injury which is significant or substantial, not insignificant, trivial or moderate.'" (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 464.) As our Supreme Court has recognized, such a showing cannot be made as to a charged offense unless the injury is substantially beyond any injury inherent in the offense. (*People v. Escobar* (1992) 3 Cal.4th 740,745-750.) Our Supreme Court has also held, and the jury was accordingly instructed, that "[r]ape, by itself, does not constitute great bodily injury." (See CALCRIM No. 1300; *People v. Caudillo* (1978) 21 Cal.3d 562, 582-583, disapproved on another ground in *Escobar*, at p. 751, fn. 5.)

Appellant concedes that he willfully threatened to rape and kidnap Breana, but contends the evidence is insufficient to support the finding that he threatened to carry out either those offenses in a manner that involved great bodily injury or death. The evidence, when viewed in the light most favorable to the judgment, compels the opposite conclusion. Appellant did not merely send messages in which he expressly threatened to rape and kidnap Breana. Among other things, he sent her a photograph of a noose with the statement "Ribbon to support the

8

cure for treason." He then sent another photograph depicting a bound nurse with a bag or hood over her head.

Although appellant asserts that the intended meaning of these photographs was ambiguous, the jury was free to find otherwise. Breana is a nurse and a noose plainly connotes a violent strangling or hanging, either of which would result in great bodily injury or death. Breana understood the photographs to mean that appellant expected her to submit to him "as he had put it in words before, or else here is the noose." Breana also testified that due to her prior history with appellant, her knowledge of his prior violent crimes, and the erratic nature of his behavior, there was "no telling what he would do." In light of the surrounding circumstances, the jury could reasonably find that appellant willfully threatened Breana with a crime involving great bodily injury or death. (*People v. Butler*, *supra*, 85 Cal.App.4th at p. 754.) Appellant's claim of insufficient evidence thus fails.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.          YEGAN, J.

9

Ryan J. Wright, Judge
Superior Court County of Ventura

_____

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephanie A. Miyoshi, and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.