Filed 12/12/22 P. v. Chao CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>ALLEN FINH CHAO et al.,<br><br>      Defendants and Appellants. | C087388<br><br>(Super. Ct. No. 15F06554) |

A jury found defendants Allen Finh Chao and Gerald Oryan Fernandez guilty of attempted murder (count 1) and second-degree robbery (count 2).  The jury also found true that both defendants personally and intentionally discharged a firearm causing great bodily injury in the commission of both offenses.  (Pen. Code, § 12022.53, subd. (d).)[1]

On appeal, Chao argues:  (1) the trial court's admission of Fernandez's hearsay

---

[1] Undesignated statutory references are to the Penal Code.

statements as declarations against interest at their joint trial violated his right to due process and a fair trial; (2) the trial court erred by not instructing the jury sua sponte on defense of others; and (3) the jury's finding that he personally and intentionally discharged a firearm proximately causing great bodily injury was not supported by substantial evidence. Both defendants argue their trial counsel rendered ineffective assistance. Chao also contends the cumulative effect of the errors he alleges necessitates reversal.[2]

We will affirm the judgment as to Chao.

In supplemental briefing, Fernandez argues, and the People concede, he is entitled to resentencing under recent amendments to sections 654 and 1170, subdivision (b). We will accept the People's concession and remand for resentencing with respect to Fernandez. In all other respects, we will affirm Fernandez's convictions.

## I. BACKGROUND

The victim testified that, on February 12, 2015, he arranged a marijuana sale at the warehouse where he was living. He was intoxicated and did not want to drive anywhere. After defendants arrived, the victim gave Fernandez the marijuana, and then both defendants pulled out semiautomatic handguns and pointed them at the victim. One of them said, " 'This is a jack' " or " 'This is a robbery.' " Chao was closer to the door and Fernandez was closer to the couch, by the victim: "I was in a direct line with Mr. Chao and Mr. Fernandez would have been off to the right a little bit." The victim grabbed the barrel of Fernandez's gun with his left hand and pulled it away from his face. Fernandez

---

[2] Fernandez's opening brief states he joins in all the arguments raised by Chao that are applicable and beneficial to him. Fernandez's reply brief effectively clarified that this joinder applied only to Chao's ineffective assistance of counsel claim. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 364 [" 'Joinder may be broadly permitted [citation], but each appellant has the burden of demonstrating error and prejudice' "].)

fired the gun while it was still in the victim's hand, and then Chao started shooting the victim's left arm. After Fernandez regained control of the gun, he started shooting at the victim too. The victim said, "[T]hey both just kept firing and shooting and trying to kill me over a stupid $300."

On the night of the shooting, law enforcement found one .40-caliber shell casing and one .25-caliber casing in the warehouse.

About a month after the shooting, police officers found a .25-caliber Beretta on the floor of a car in which Chao was a passenger. The prosecution's expert on firearm and toolmark identification opined that the .25-caliber casing that was found in the warehouse was fired from this Beretta pistol. A criminalist with the Sacramento County District Attorney's Office, Laboratory of Forensic Services, opined that the DNA found on the magazine and trigger matched Chao's.

## II. DISCUSSION

### A. Fernandez's Statements to Brandon

Chao argues the trial court's admission of certain hearsay statements made by Fernandez as declarations against interest at their joint trial violated his right to due process and a fair trial. We disagree.

### 1. Trial Court Proceedings

Prior to trial, the People moved in limine to admit statements made by Fernandez to Brandon that incriminated both defendants. The motion explained the statements at issue were non-testimonial[3] and were admissible as declarations against interest. The

---

[3] Chao concedes that the statements at issue in this case are nontestimonial. "Under the so-called *Aranda/Bruton* doctrine, a trial court may generally not allow a jury in a joint criminal trial of a defendant and codefendant to hear the unredacted confession of the codefendant that also directly implicates the defendant—even if the jury is instructed not to consider the confession as evidence against the defendant." (*People v. Washington* (2017) 15 Cal.App.5th 19, 22-23.) Following the United States Supreme Court's decision in *Crawford v. Washington* (2004) 541 U.S. 36, the *Aranda/Bruton* doctrine has

motion attached transcripts of law enforcement interviews with Brandon. At the time of the interviews, Brandon was facing charges related to a March 27, 2015 robbery. By the time he testified, he had been convicted of that robbery.

During the first interview, on March 27, 2015, Brandon explained he had information about an attempted murder that occurred about a month earlier involving Fernandez, Chao, and a driver. Brandon agreed he heard about what happened from Fernandez. Brandon said Fernandez and Chao set up a person to get money or weed. Fernandez had obtained a cell phone. Chao shot the victim twice in the back, the victim fell forward, and then Fernandez shot the victim in the face. "[A]fter that then they . . . take whatever and they leave." During the second interview, Brandon indicated he had recently learned the driver was someone else. The trial court granted the motion and admitted the statements by Fernandez to Brandon against both defendants. A portion of the first interview was introduced into evidence.[4]

2.      *Statements Against Interest*

"Evidence Code section 1230 sets out the hearsay exception for statements against interest: 'Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability . . . , or

no application to nontestimonial statements. (*Washington, supra*, at pp. 28-29.) In his reply brief, Chao suggests a recent California Supreme Court case has held otherwise "sub silentio by implication." We disagree. *People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719 never discusses whether the statements at issue were testimonial or nontestimonial and found no *Aranda/Bruton* error occurred. (*Id*. at pp. 750, 753-755.) "It is axiomatic that cases are not authority for propositions not considered." (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.)

[4] The excerpt did not include Brandon's statement that Chao hit his girlfriend with the gun because she reported him to the police. As such, we need not analyze its admissibility.

4

created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true.' The rationale for the exception 'is that "a person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest," thereby mitigating the dangers usually associated with the admission of out-of-court statements.' [Citation.] To satisfy the exception, the proponent ' "must show 'that the declarant is unavailable, that the declaration was against the declarant's penal [or other] interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character.' " ' [Citations.] We review the trial court's ruling for abuse of discretion. [Citations.] Its decision will not be disturbed on appeal ' "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Chhoun* (2021) 11 Cal.5th 1, 584.)[5]

Chao argues the trial court abused its discretion in admitting the statements because they were not primarily or significantly against interest and hence were unreliable. We disagree. " 'In determining whether a statement is truly against interest within the meaning of Evidence Code section 1230, and hence is sufficiently trustworthy to be admissible, the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant.' " (*People v. Flinner* (2020) 10 Cal.5th 686, 735.)

Fernandez's hearsay statements were contrary to his penal interests as they essentially admitted he aided and abetted murder and robbery. We disagree with Chao's suggestion that Fernandez's statement that Chao fired first was exculpatory as to

---

[5] Fernandez "became unavailable as a witness when he asserted the privilege against self-incrimination." (*People v. Chhoun, supra*, 11 Cal.5th at p. 584.)

Fernandez. Rather, we agree with the People that Fernandez's statements implicated himself and Chao equally in the robbery and attempted murder. Further, while Brandon may have been motivated to give law enforcement information about another crime to obtain leniency with respect to his separate charges, the circumstances of Fernandez's underlying hearsay statements reveal no such motivation. Fernandez's statements did not shift blame and were made to a friend. (See *People v. Flinner, supra*, 10 Cal.5th at p. 736 ["no portion of Flinner's statements sought to shift blame for Keck's death away from himself, and he made the statements to a close friend"].) Under these circumstances, the trial court did not abuse its discretion in admitting Fernandez's hearsay statements as statements against his penal interest.

## B.     *Defense of Others*

On appeal, Chao argues the trial court erred by not instructing sua sponte on the full scope of a defense—defense of others—that was supported by substantial evidence. We conclude any error was harmless.

Self-defense and defense of others are related concepts. (*People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on another point in *People v. Chun* (2009) 45 Cal.4th 1172, 1201.) "[B]oth self-defense and defense of others, whether perfect or imperfect, require an actual fear of imminent harm." (*People v. Butler* (2009) 46 Cal.4th 847, 868, emphasis omitted.) The defense is perfect and the killing is neither murder nor manslaughter but a justifiable homicide when the defendant's belief in the necessity of defending oneself or another from imminent danger of death or great bodily injury is reasonable. (*Randle, supra*, at p. 994.) "[O]ne who kills in imperfect defense of others— in the actual but unreasonable belief he must defend another from imminent danger of death or great bodily injury—is guilty only of manslaughter." (*Id.* at pp. 997.)

The trial court instructed the jury regarding perfect and imperfect self-defense. With respect to the former, the jury was instructed that "defendant acted in lawful self-defense if: [¶] 1. The defendant reasonably believed that *he* was in imminent danger of

6

suffering bodily injury; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; [¶] AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger." (Italics added.) The instruction on perfect self-defense also referenced defense of others, explaining that "[b]elief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was imminent danger of bodily injury to himself *or someone else*." (Italics added.) This was the only reference to defense of others; the instructions regarding imperfect self-defense did not contain similar language referencing defense of others.

At trial, counsel for defendants both indicated they were comfortable with the instructions. Nonetheless, " ' "[i]t is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence" ' and ' "necessary for the jury's understanding of the case." ' [Citations.] It is also well settled that this duty to instruct extends to defenses 'if it appears . . . the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 73.)

Assuming the court erred in not fully instructing on defense of others, the error was harmless. Chao concedes that to demonstrate prejudice he must show it is reasonably probable he would have obtained a more favorable outcome had the error not occurred. (See *People v. Randle, supra*, 35 Cal.4th at p. 1003 ["Any error in failing to instruct on imperfect defense of others is state law error alone, and thus subject, under article VI, section 13 of the California Constitution, to the harmless error test articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836"]; see also *People v. Breverman* (1998) 19 Cal.4th 142, 178 [concluding "error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under *Watson*"].)

7

There was limited evidence on which to develop a defense of others theory. The person who drove defendants to the warehouse testified defendants said the seller "was reaching for a gun or something like that." The driver did not recall either defendant saying the seller had shot them.

At trial, Brandon was asked, "You said that this person . . . may have had a gun, that he went for a gun or something, right? [¶] Isn't that what you told the detectives?" Brandon replied, "I do not remember that part." Chao appears to acknowledge the transcripts in the record support Brandon's testimony in that they do not capture Brandon ever actually making such a statement to law enforcement.

The victim testified he did not have a firearm, and he pulled Fernandez's gun aside after both defendants pointed guns at him.

During closing argument, the prosecutor argued self-defense did not apply because there was no evidence the victim had a gun and defendants' actions after the shooting demonstrated they did not act in self-defense. Fernandez's counsel argued the victim was the initial aggressor who fired the first shot from his own gun, which struck the refrigerator behind Fernandez, and Chao and Fernandez shot the victim to "defend themselves." Chao's counsel also argued the victim shot them. Chao's counsel specifically argued Chao was *not* defending Fernandez but had to have been defending himself: "[I]s Chao supposed to know where the shot is coming from, which one or which way, who[ has] the gun and who is shooting? He at that point reasonably gets to defend himself. . . . Chao would have seen two people standing really close to each other in the middle of the room, in a dark room, and he is taking a real chance of hitting Fernandez. It would be hard to distinguish him. . . . I think [the victim] sat on the couch and accidentally fired off the gun and Chao reacted. He thought he was in danger, and has the right to protect himself."

By its verdict, the jury found defendants had failed to raise even a reasonable doubt about the truth of their version of events. Given the jury found both defendants

8

guilty of attempted murder, we are not persuaded there is a reasonable possibility that if the jury had been instructed on defense of others, it would have found a reasonable doubt that Chao fired in the reasonable or unreasonable belief that he was defending *only* Fernandez and that he possessed such a right.

On appeal, Chao argues competent counsel would have requested instructions on defense of others and argued Chao acted in an honest reasonable or unreasonable belief in the need to protect Fernandez from imminent harm based, in part, on the victim's stress, Chao's impaired view of Fernandez's and the victim's hands, and the victim's testimony that he was shot while pushing the gun away. However, Chao acknowledges self-defense is generally not available to the initiator of an assault. Neither self-defense or defense of others may be "invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1; see also *People v. Randle, supra*, 35 Cal.4th at pp. 1001-1003.) Chao was Fernandez's partner in creating the circumstances that justified the victim's actions. Further, for the jury to conclude Chao was acting only to defend Fernandez and not himself, it would have had to disregard the compelling argument to the contrary made by Chao's own counsel.

We conclude Chao has failed to demonstrate prejudice.

C.    *The Jury's Finding That Chao Proximately Caused Great Bodily Injury*

Chao argues the jury's finding that he personally and intentionally discharged a firearm proximately causing great bodily injury was not supported by substantial evidence. Specifically, Chao suggests there was not substantial evidence he actually shot the victim or was the proximate cause of the victim's injuries. We disagree.

Section 12022.53, subdivision (d) provides that "a person who, in the commission [of specified felonies,] personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7 . . . to a person other than an

9

accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." "The enhancement applies so long as defendant's personal discharge of a firearm was a proximate, i.e., a substantial, factor contributing to the result." (*People v. Bland* (2002) 28 Cal.4th 313, 338.) Section 12022.53, subdivision (d) incorporates the definition of great bodily injury found in section 12022.7, which defines such injury as "a significant or substantial physical injury." (§ 12022.7, subd. (f).) Our Supreme Court "has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. [Citations.] ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.] Where to draw that line is for the jury to decide." (*People v. Cross* (2008) 45 Cal.4th 58, 64.) A finding that the victim suffered great bodily injury must be upheld on appeal if it is supported by substantial evidence. (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) " 'In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] "A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." ' " (*People v. Livingston* (2012) 53 Cal.4th 1145, 1170.)

As set forth above, the victim testified Chao shot at his left arm and then Fernandez started shooting at him. An emergency room physician who treated the victim opined that he had been shot at least three times and had six gunshot wounds: two to his

10

left arm, two to his abdomen, and two to his left chest. He had two rib fractures in his left lung, blood in his chest, a pierced small bowel, and a fractured pelvis. The victim is left-handed and three of the fingers in his left hand are now numb. He can no longer draw or write. This was sufficient evidence that Chao discharged a firearm and proximately caused the victim great bodily injury. (*People v. Escobar, supra*, 3 Cal.4th at p. 750; *People v. Le* (2006) 137 Cal.App.4th 54, 58-59.)

### D. *Alleged Ineffective Assistance of Counsel*

Defendants' remaining arguments each involve a claim of ineffective assistance of counsel based on trial counsel's failure to raise specific issues in the trial court. To establish a claim of ineffective assistance of counsel, defendant must show: (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) "resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai, supra*, 57 Cal.4th at p. 1009.) We will now address each claim of ineffective assistance.

### 1. *Failure to Preserve Evidence*

As we previously noted, on the night of the shooting, law enforcement found one .40-caliber shell casing and one .25-caliber casing in the warehouse. A detective

11

performed an additional search of the warehouse on February 19, 2015, and found another spent shell casing underneath the couch. The detective testified that he found a bullet strike on the refrigerator door and looked inside the refrigerator. On cross examination, the detective agreed there was penetration into the metal and no one dug a slug out of the refrigerator. The victim later gave law enforcement another .40-caliber casing. The detective testified he did not order any comparisons of the .40-caliber shell casings.

Defendants argue the detective should have gathered the bullet from the refrigerator and had the .40-caliber casings tested to see if they were all fired by the same gun. Defendants contend this alleged failure to gather and preserve material exculpatory evidence violated their right to due process pursuant to *Brady v. Maryland* (1963) 373 U.S. 83, *Arizona v. Youngblood* (1988) 488 U.S. 51, and *California v. Trombetta* (1984) 467 U.S. 479. Defendants concede this claim is forfeited for failure to raise it in the trial court. (*People v. Chism* (2014) 58 Cal.4th 1266, 1300; *People v. Morrison* (2004) 34 Cal.4th 698, 714.) As such, they argue their trial counsels deprived them of effective assistance. We conclude defendants have failed to demonstrate ineffective assistance.

"Law enforcement agencies have a duty, under the due process clause of the Fourteenth Amendment, to preserve evidence 'that might be expected to play a significant role in the suspect's defense.' " (*People v. Roybal* (1998) 19 Cal.4th 481, 509, quoting *California v. Trombetta*, *supra*, 467 U.S. at p. 488.) "To fall within the scope of this duty, the evidence 'must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " (*Roybal, supra,* at p. 510.) "The state's responsibility is further limited when the defendant's challenge is to 'the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.' " (*Ibid.*, quoting *Arizona v. Youngblood, supra*, 488 U.S. at p. 57.) In

12

such case, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (*Youngblood, supra*, at p. 58.) "The assessment of bad faith 'must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.' " (*People v. Flores* (2020) 9 Cal.5th 371, 394.) "[N]egligence does not establish constitutional bad faith." (*Id.* at p. 397.)

Defendants cite nothing in the record indicating law enforcement possessed the relevant knowledge at a time when the refrigerator could have been examined. Nor does the record establish there was ever a bullet *to* dig out of the refrigerator. The detective agreed there was penetration into the metal and no one dug a slug out of the refrigerator. He did not state there was a bullet still in the refrigerator. The prosecution's expert on firearm and toolmark identification testified that the defect in the refrigerator "could be a bullet hole; it might not be a bullet hole." As such, on direct appeal we cannot conclude trial counsel did not forfeit the issue after reasonably concluding it would be unable to establish bad faith. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless argument does not demonstrate ineffective assistance of counsel].)

### 2. Alleged Prosecutorial Misconduct in Closing Argument

#### a. Trial Court Proceedings

Fernandez's counsel and the prosecutor both discussed the jury instructions regarding circumstantial evidence during closing argument. On appeal, Fernandez argues the prosecutor's statements constituted misconduct because they misstated the law. We will begin our analysis of this issue by setting forth the jury instructions referenced in these closing arguments.

The jury was instructed with CALCRIM No. 220 on reasonable doubt that "[i]n deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all the evidence that was received throughout the entire trial."

The jury was instructed with CALCRIM No. 223 on the distinctions between direct and circumstantial evidence:

"Facts may be proved by direct or circumstantial evidence or by a combination of both. *Direct evidence* can prove a fact by itself. For example, if a witness testifies he saw it raining outside before he came into the courthouse, that testimony is direct evidence that it was raining. Circumstantial evidence also may be called indirect evidence. *Circumstantial evidence* does not directly prove the fact to be decided, but is evidence of another fact or group of facts from which you may logically and reasonably conclude the truth of the fact in question. For example, if a witness testifies that he saw someone come inside wearing a raincoat covered with drops of water, that testimony is circumstantial evidence because it may support a conclusion that it was raining outside.

"Both direct and circumstantial evidence are acceptable types of evidence to prove or disprove the elements of a charge, including intent and mental state and acts necessary to a conviction, and neither is necessarily more reliable than the other. Neither is entitled to any greater weight than the other. You must decide whether a fact in issue has been proved based on all the evidence."

The court instructed on using circumstantial evidence to prove intent or mental state with CALCRIM No. 225. In relevant part, the instruction states:

"Before you may rely upon circumstantial evidence to conclude that a fact necessary to find a defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to conclude that a defendant had the required intent and/or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent and/or mental state. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent and/or mental state[,] and another

14

reasonable conclusion supports a finding that the defendant did not, you must conclude that the intent and/or mental state was not proved by the circumstantial evidence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

Finally, the court gave a modified version of CALCRIM No. 224 titled "225a" regarding using circumstantial evidence to prove more than just intent or mental state:

"In addition to the required intent, you also can rely upon circumstantial evidence to prove all of the remaining elements of any offense. Before you may rely on circumstantial evidence to find a defendant guilty of any offense, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty. If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions points towards innocence and another towards guilt, you must accept the one that points to innocence. However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

During closing argument, defense counsel for Fernandez discussed the instructions on circumstantial evidence and argued:

"If there are two or more reasonable conclusions and any conclusion that's reasonable regarding evidence, regarding conclusions, point to innocence, the law requires you pick that even if you don't want to, even if it doesn't feel good, even if you don't like the outcome. That's the law, that you have to pick that one that points to innocence.

"So the analysis is you take a fact or a piece of evidence or even a set of facts and you ask yourself, 'Okay. Is there a version that points to guilt? Is there a version that points to innocence?' And if the answer ever to the question about innocence is yes, there is a version that points to innocence, put a checkmark next to it. You are done with your analysis on that. That's what the law says." Counsel then argued "[o]ne fact that

15

may indicate whether or not there's a robbery is that these two guys brought guns with them," and it was reasonable to find defendants were armed to protect themselves, not to commit a robbery. Counsel argued reasonable conclusions pointing to innocence could be made from other evidence.

In rebuttal, the prosecutor argued:

"I'm going to start with our lovely Venn diagram over here. And the way that [defense counsel] would like you to view the evidence in this case is one step at a time. Right? The way she wants you to look at this is that [the victim] lies, checkmark on that thing. Right? Brought guns, checkmark on that thing, all of those things individually, but that's not what our common sense says. That's not how we operate in real life. That's not the reason that you are here, . . . to view the evidence. That's not the way we do things in our life. We look at things as a whole. We look at it all together. So it's not just those things individually. It's all of them taken together as a whole, all of the evidence.

"[¶] . . . [¶]

"And how do I know that I'm correct about these things? Well, let's look at the law in a couple of different places. [CALCRIM No.] 220 that you were read by the Judge is the reasonable doubt instruction. It tells you—or attempts to tell you what reasonable doubt is. And I have highlighted that underlined portion there where it says, in deciding whether the People have proved their case beyond a reasonable doubt, you must impartially compare and consider all of the evidence. And it's pretty simple English. You compare and consider all of the evidence. 'Compare' is the operative word here. You compare all of it together. You are considering all of it together, not just piece by piece.

"The other instruction that's up here is the circumstantial evidence instruction. This is [CALCRIM No.] 225. You must be convinced that the only reasonable conclusion supported by *the* circumstantial evidence, not *a* circumstantial evidence. And

16

I realize it's a little confusing because evidence is not evidences.  But if they meant you consider just one piece of the evidence, it would say 'a' piece of circumstantial evidence, but it says consider all of it, all of the circumstantial evidence in the case.  Right?  So you . . . are looking at all of it together, all of those things together, and whether you can find a reasonable explanation that's other than guilt when you look at all of those things together, and I submit to you that you cannot.

"There is no reasonable explanation for all of those things that doesn't point to the fact that these guys robbed and attempted to kill [the victim]."  (Italics added.)  At trial, Fernandez's counsel did not object to the prosecutor's argument.

### b.      Alleged Misstatement of the Law

On appeal, Fernandez argues the prosecutor committed misconduct by misstating the law regarding circumstantial evidence during his rebuttal closing argument. "Advocates are given significant leeway in discussing the legal and factual merits of a case during argument. [Citation.]  However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666 (*Centeno*).)  " 'Improper comments violate the federal Constitution when they constitute a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process. [Citation.]  Improper comments falling short of this test nevertheless constitute misconduct under state law if they involve use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.  [Citation.]  To establish misconduct, defendant need not show that the prosecutor acted in bad faith. [Citation.]' [Citation.] However, '[w]hen attacking the prosecutor's remarks to the jury, the defendant must show that, "[i]n the context of the whole argument and the instructions" [citation], there was "a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner." ' " (*People v. Bell* (2019) 7 Cal.5th 70, 111.)

17

Fernandez's alleged prosecutorial misconduct claim was forfeited. (*Centeno*, *supra*, 60 Cal.4th at p. 674.) "As a general rule, ' "[a] defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." ' " (*Ibid.*) Recognizing his trial counsel did not object or request an admonition, Fernandez argues his trial counsel was ineffective. We disagree.

" '[T]he decision facing counsel in the midst of trial over whether to object to comments made by the prosecutor in closing argument is a highly tactical one . . .' [citation], and 'a mere failure to object to evidence or argument seldom establishes counsel's incompetence.' " (*Centeno, supra*, 60 Cal.4th at p. 675.)

To the extent the prosecutor's argument conflicted with the instructions, the jurors had already been instructed that if they believed the attorneys' comments on the law conflicted with the instructions, they must follow the instructions. We presume they did so. (*People v. Boyette* (2002) 29 Cal.4th 381, 436.) In *Centeno*, "the problems with the prosecutor's argument were not difficult to discern." (*Centeno, supra*, 60 Cal.4th at p. 675.) Here, Fernandez has cited no authority establishing the prosecutor misstated the law. Fernandez relies solely on *People v. Anderson* (2007) 152 Cal.App.4th 919, in which this court rejected an argument that CALCRIM No. 224 should not be limited to circumstantial evidence but should address direct evidence as well: "Defendant cites as support a number of cases where the juries had been instructed that if two conclusions can be drawn from the evidence as a whole, one pointing to guilt and the other pointing to innocence, it must find the defendant not guilty. [Citations.] But the question addressed by CALCRIM No. 224 is not how to consider the evidence *as a whole* but how to consider specific circumstantial evidence. The instruction concerns whether a necessary fact may reasonably be inferred from circumstantial evidence when that evidence can be construed in a way that points to the defendant's innocence, not whether the evidence as a

18

whole may reasonably be construed to point to the defendant's innocence." (*Anderson, supra,* at pp. 931-932.) This portion of *Anderson* was addressing exclusively whether CALCRIM No. 224 should have been drafted to reach direct evidence, and explaining that the instruction addresses how to evaluate the circumstantial evidence. *Anderson* does not address whether all the circumstantial evidence pertaining to a necessary fact must be analyzed individually or collectively or whether a jury is entitled to do either. As such, Fernandez has not persuaded us that his trial counsel's decision not to object to the prosecutor's rebuttal argument fell below an objective standard of reasonableness.

3. *Violation of Court's Order Not to Mention Fernandez's March 2015 Arrest*

Prior to trial, Fernandez moved in limine to exclude any evidence of any other arrests or cases. The trial court granted the motion with respect to any statements about Fernandez's involvement in the March 2015 robbery for which Brandon was in custody on March 27 and 31, 2015. Fernandez argues his defense counsel rendered ineffective assistance when she did not move for a mistrial after a detective violated the court's order.

As we previously indicated, Brandon was interviewed on March 27, 2015, in connection with a robbery that took place that day. He offered the officer who interviewed him information about defendants' case.

The detective who investigated defendants' case testified regarding the information that was relayed to him: "I received a phone call about some individuals that had been detained and were being interviewed, and *one of the individuals that was detained was Gerald Fernandez,* and there was another individual by the name of Brandon[]. And [the officer] said that during the interview with [Brandon], [Brandon] told him about another incident that seemed to match up with my investigation." (Italics added.)

Later, outside of the jury's presence, the trial court and the parties discussed what to do about the fact this testimony violated the court's order. Fernandez's trial counsel

explained she did not react in front of the jury in case they could fix the issue because this was the last witness in a very long trial. However, she explained she did not "see a way to fix this, other than" to have the detective come back and testify that he was mistaken. She had discussed the possibilities with her client, including a motion for a mistrial and curative instruction, and they had agreed that the best way to proceed was with additional testimony from the detective. She thought "having a curative instruction by the Court puts flashing red lights around the issue for the jury." The trial court agreed with Fernandez's counsel's proposal so long as she and the People agreed on a solution.

After the detective's testimony resumed, the prosecutor and the detective had the following exchange:

"Q[:] I also wanted to clarify with you. Your colleagues brought Gerald Fernandez in to interview him, and this is going back to the interview with Brandon[]. [¶] But your colleagues also brought Gerald Fernandez in to interview him in the hopes that he had information about Brandon[]'s case; is that correct?

"A[:] Yes, that's correct.

"Q[:] And your colleagues interviewed multiple people in hopes that they had information about Brandon[]; isn't that correct?

"A[:] Yes, that's correct."

Fernandez argues his trial counsel rendered ineffective assistance by not moving for a mistrial. "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions. [Citation.] Accordingly, it would be a rare case in which the merits of a mistrial motion were so clear that counsel's failure to make the motion would amount to ineffective assistance. Nonetheless, defendant could conceivably prove incompetence if his counsel's omission was shown to be grounded in ignorance or misapplication of the law rather than tactical considerations

20

[citations] and if the motion for mistrial bore strong potential for success." (*People v. Haskett* (1982) 30 Cal.3d 841, 854-855.) We conclude this is not the rare case in which counsel's failure to make a motion for mistrial amounted to ineffective assistance. It appears trial counsel reasonably concluded that due to the brief reference to Fernandez being detained, and the later clarification, a motion for a mistrial was unlikely to succeed or a second trial was not a desirable outcome. (See *id.* at p. 855 ["even if he concluded that his chances were positive, he may have refrained for fear that a second trial under less favorable circumstances would follow"].)

We reject defendants' assertions that their trial counsel gave them constitutionally ineffective assistance.

E.      *No Cumulative Error*

Chao claims the cumulative effect of his alleged errors requires reversal of his convictions. We have assumed error only with respect to the jury instructions regarding defense of others, and we concluded this error to be harmless. Thus, "there is no prejudice to cumulate." (*People v. Reed* (2018) 4 Cal.5th 989, 1018.)

F.      *Sentencing*

On June 8, 2018, the trial court sentenced Fernandez to the upper term of 9 years for count 1, plus a consecutive term of 25 years to life for the section 12022.53, subdivision (d) enhancement. On count 2, the court also imposed the upper term (5 years), but stayed the sentence under section 654. In supplemental briefing, Fernandez argues, and the People concede, the matter must be remanded for resentencing based on recent amendments to sections 654 and 1170, subdivision (b). We accept the People's concessions.

        1.      *Amended Section 1170*

At the time of defendant's sentencing, section 1170, subdivision (b) provided that "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of

21

the court." (Stats. 2017, ch. 287, § 1.) Effective January 1, 2022, this provision was divided into subparts. (Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(1) provides "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." The referenced exception provides that an upper term sentence may be imposed "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) However, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."[6] (§ 1170, subd. (b)(3).) Additionally, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense," including "(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6).) A youth under section 1016.7 is "any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).) Fernandez was 20 years old at the time he committed the offenses.

"[T]he amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively in this case as an ameliorative change in the law

---

[6] "This paragraph does not apply to enhancements imposed on prior convictions." (§ 1170, subd. (b)(3).)

applicable to all nonfinal convictions on appeal." (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) Fernandez argues, and the People concede, that he is entitled to resentencing in light of these changes. We accept this concession and remand for resentencing consistent with this opinion. (See *ibid.* ["Undisputedly, defendant was under age 26 when he committed this crime. Accordingly, we agree with the parties that under section 1170, subdivision (b), defendant's six-year midterm sentence must be vacated"].)

2.      *Amended Section 654*

At the time of sentencing, section 654, subdivision (a), provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Stats. 1997, ch. 410, § 1.) Thus, the trial court was required to impose the sentence for count 1 because it was the longest. This provision was amended, effective January 1, 2022, to remove the requirement that the court impose the longest potential term of imprisonment: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (Stats. 2021, ch. 441, § 1.)

The parties agree that this amendment to section 654 also applies retroactively to Fernandez's case and that remand is required to allow the trial court to consider whether to exercise its new discretion under amended section 654 to stay count 1 instead of count 2. We accept the People's concession on this point as well. (See *People v. Jones* (2022) 79 Cal.App.5th 37, 45-46 [remanding for full resentencing under amended sections 1170, subdivision (b), and 654].)

23

## III.  DISPOSITION

Fernandez's sentence is vacated, and the matter remanded to the trial court for resentencing under amended sections 1170, subdivision (b), and 654.  Fernandez's conviction is otherwise affirmed.  The judgment as to Chao is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

ROBIE, Acting P. J.

/S/

_____

HOCH, J.